## SMITH *v.* ADAMS.

APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF
DAKOTA.

No. 1498. Submitted March 11, 1889.—Decided April 1, 1889.

The validity of an election to determine the county seat of a county in Dakota under the laws of the Territory, when presented to the courts in the form prescribed by those laws, becomes a subject of action within the jurisdiction of the territorial court, whose judgment thereon is subject to appeal to the Supreme Court of the Territory.

"By the matter in dispute," as that phrase is used in the statutes conferring jurisdiction on this court, is meant the subject of litigation, the matter

upon which the action is brought and issue is joined, and in relation to which, if the issue be one of fact, testimony is taken; and its pecuniary value may be determined not only by the money judgment prayed, but, in some cases, by the increased or diminished value of the property directly affected by the relief prayed, or by the pecuniary result to one of the parties immediately from the judgment.

A promise by a third person to grant to a litigant certain lands, or make particular donations exceeding $5000 in value in case of a successful prosecution of a suit, will not confer jurisdiction on this court, if without such promise or conditional donation the court would not have the requisite jurisdiction.

A judgment of a lower appellate court, which reverses the judgment of the court of original jurisdiction and remands the case to it for further proceedings, is not a final judgment.

A judgment of reversal is only final when it also enters or directs the entry of a judgment which disposes of the case.

MOTIONS TO DISMISS OR AFFIRM. The case, as stated by the court in its opinion, was as follows:

The facts disclosed by the record are briefly as follows: The Political Code of Dakota, in force in 1886, in providing for the organization of counties and the location of their county seats, authorizes the Governor of the Territory, upon proper application of the voters of any unorganized county, to take measures for its organization, and for that purpose to appoint commissioners to locate the county seat temporarily, and to appoint officers of the county to hold their offices until the next general election. Political Code, c. 21, §§ 2, 3 and 4. It then directs that, at the first general election subsequent to such organization, the legal voters of the county shall designate on their ballots the place of their choice for county seat, and that the place thus designated receiving a majority of all the votes cast shall thereafter be the county seat, but that, if no place receives a majority of such votes, the place designated as the county seat temporarily shall remain the county seat until changed as provided in a subsequent section. c. 21, § 6. That section declares in substance that, upon petition of two thirds of the qualified voters of the county, it shall be the duty of the county commissioners to notify the voters to again designate upon their ballots at the next succeeding general

election the place of their choice, and if, upon the canvass of such votes, any of the places thus designated shall receive two thirds of the votes cast, such place shall be the county seat. c. 21, § 7.

On the 30th of July, 1886, Congress passed an act "to prohibit the passage of local or special laws in the Territories of the United States, to limit territorial indebtedness, and for other purposes." 24 Stat. 170, c. 818. The first section, among other things, enacts: "That the legislatures of the Territories of the United States now, or hereafter to be, organized, shall not pass local or special laws in any of the following enumerated cases, that is to say: granting divorces; changing the names of persons or places; laying out, opening, altering and working roads or highways; vacating roads, town plats, streets, alleys and public grounds; locating or changing county seats; regulating county and township affairs; regulating the practice in courts of justice; regulating the jurisdiction and duties of justices of the peace, police magistrates and constables," etc. The 7th section declares that all acts and parts of acts subsequently passed by any territorial legislature in conflict with the provisions of this act of Congress shall be null and void.

The county of Brown in Dakota was organized under the provisions of the Political Code, and the city of Columbia was designated by the commissioners as the county seat temporarily, and it remained as such county seat until some time in 1887, no other place having been designated by a majority of the voters of the county. On the 11th of March, 1887, the territorial legislature passed an act "to provide for the relocation of county seats in counties where county seats have been located by a vote less than a majority of all the electors voting thereon." Laws of 1887, c. 173, p. 369. Section 1 of this act, as amended on the same day when the original act took effect, provides: "That in all counties in this Territory having a population not less than twelve thousand as shown by the census of 1885, and having an area of not less than forty-eight Congressional townships, and in which the present county seat thereof has been heretofore temporarily located under the

provisions of section four of chapter twenty-one of the Political Code, and remaining the county seat under the provisions of section six of chapter twenty-one of the Political Code, by reason of the fact that no place received a majority of all the votes cast at the election held under the provisions of said section six of chapter twenty-one of the Political Code, there shall be held a special election of the duly qualified voters of such counties on the twelfth day of July, A.D. 1887, at which election the question of the relocation of the county seat of such counties shall be voted upon: *Provided*, That such election shall not be held in any county unless there shall be presented to the judge of the District Court of the district in which such county is situated, or in his absence from such district, or in his inability to act, to the Chief Justice of said Territory, a petition signed by at least one third in number of the electors of said county as shown by the vote cast at the last general election, praying said judge to issue an order directing the holding of said election as provided in this act. If said judge shall find that said petition is signed by one third of the electors of said county as above provided, he shall issue an order directing said election to be held in accordance with the provisions of this act."

In other sections provision is made for giving notice of the election and for canvassing the votes, and for removing the records of the county to the place designated. Under this act an election was held in Brown County on the 12th of July, 1887, on the question of relocating the county seat of that county. A majority of the votes were cast in favor of the city of Aberdeen as the county seat, and the county offices with their records and papers were accordingly removed to it from Columbia.

By a law of the Territory any elector, upon leave of the District Court of the district embracing the county, may contest the validity of such an election. The plaintiff below, John E. Adams, upon a petition setting forth his objections to the election in question, was allowed by the District Court of the Fifth District to contest its validity and to bring an action in that court for that purpose. He accordingly filed a notice of

contest, addressed to the commissioners of the county, in the nature of a complaint, commencing the action authorized.

The ground upon which the validity of the election was assailed was that the act of the territorial legislature was in conflict with the act of Congress of July 30, 1886, prohibiting local or special legislation "locating or changing county seats;" that the territorial act, though general in its terms, was so drawn as to be applicable to only one county, no other county coming within its provisions; that this fact was well known at the time to the legislature; and that the object of passing the act in this form was to evade and nullify the act of Congress. The complaint contains all other allegations as to the status of the contestant, the appointment of the commissioners, the condition of Brown County as an unorganized county, the temporary location of its county seat, the number of its population, the passage of the territorial act and the election thereunder and consequent proceedings, which were necessary to raise the question of the validity of the election. To this notice of contest or complaint the commissioners demurred on the ground that it did not state facts sufficient to constitute a cause of action against them or either of them. The District Court sustained the demurrer as a matter of form, and as the plaintiff, cted to stand upon his complaint without amendment, ordered that the same be dismissed. On appeal to the Supreme Court of the Territory this judgment was reversed, and the cause remanded to the District Court for further proceedings according to law and the judgment of the appellate court.

The reversal was ordered on the ground —

"First. That appellant's action was properly brought, and the act of the legislature of the Territory of Dakota, passed March 11, 1887, under which the election was held, by which the county seat of Brown County, D. T., was removed from Columbia to Aberdeen, is in conflict with the act of Congress, approved July 30, 1886, prohibiting special legislation in the Territories of the United States.

"Second. That the appellant has such an interest in the subject matter as enables him to maintain this action.

"Third. That the judgment rendered. is such a final judgment as entitles him to an appeal."

To review the judgment of the Supreme Court of the Territory the case was appealed to this court, the appeal being allowed in open court, and also by the Chief Justice of the Territory. There were five commissioners of the county, and three of them afterwards prayed that the order allowing the appeal be vacated, stating that they had become satisfied that no further proceedings should be had in the case, and that, as a majority of the board, they had, before the appeal bond was filed or any citations were issued, directed their attorneys not to perfect the appeal, but that the attorneys had disregarded the instructions. It does not appear that any action was taken in the court below upon the application.

It appears from documents filed in the court below after the appeal was taken, that on the 27th of June, 1887, the city of Aberdeen conveyed to the county of Brown certain real property, exceeding in value $5000, situated within its limits, with the building in process of erection thereon, to be held by the county so long as the building should be used for a court-house, but when the building ceased to be thus used the land to revert to the grantor.

The respondent now moves that the appeal be dismissed, or that the judgment below be affirmed, for the following among other reasons:

I. Because this court has no jurisdiction of the subject matter of the action, no Federal question being involved.

(a) The matter in dispute, exclusive of costs, does not exceed the sum of five thousand dollars; no sum of money being in dispute and no right the value of which can be calculated or ascertained.

(b) No question is presented involving the validity of any patent or copyright, nor is there drawn in question the validity of a treaty or statute of, or an authority exercised under, the United States.

II. Because it appears from the record that before the appeal to the Supreme Court of the United States was perfected a majority of the county commissioners declined to perfect and

prosecute the same, and directed their attorneys not to perfect it, the instructions being given before any bond on appeal had been approved or citations issued.

*Mr. George F. Edmunds* and *Mr. C. F. Palmer* for the motions.

*Mr. Samuel Shellabarger* and *Mr. Jeremiah M. Wilson* opposing.

Mr. Justice Field delivered the opinion of the court.

The designation of the county seat of a county in Dakota, or providing for its designation by popular election, was a matter properly belonging to the legislative department of the territorial government. It was not a matter by itself for judicial cognizance. But when the law of the Territory left the designation of a county seat to the voters of the county, and provided that the validity of the election could be contested by any competent elector of the county before the District Court of the district within which the county was situated, upon leave obtained from such court for that purpose, and prescribed the mode in which such contest should be prosecuted by the contesting elector, and defended by the commissioners of the county under whose direction the election was held, and proofs be taken upon the matter in issue, and that the validity of the election should then be determined by the District Court — the designation of a county seat under the law became the subject of judicial cognizance, a case or controversy arising upon such proceedings being taken to which the judicial power of the Territory attaches. This has been substantially the meaning given to the terms "cases and controversies," used in the judicial article of the Constitution defining the limits of the judicial power of the United States. By those terms are intended the claims or contentions of litigants brought before the courts for adjudication by regular proceedings established for the protection or enforcement of rights, or the prevention, redress, or punishment of wrongs. Whenever the claim or contention of a party takes such a

form that the judicial power is capable of acting upon it, then it has become a case or controversy. Thus, in *Osborn* v. *Bank of the United States*, 9 Wheat. 738, 819, this court, speaking by Chief Justice Marshall, after quoting the third article of the Constitution declaring the extent of the judicial power of the United States, said: "This clause enables the judicial department to receive jurisdiction to the full extent of the Constitution, laws and treaties of the United States, when any question respecting them shall assume such a form that the judicial power is capable of acting on it. That power is capable of acting only when the subject is submitted to it by a party who asserts his rights in the form prescribed by law. It then becomes a case, and the Constitution declares that the judicial power shall extend to all cases arising under the Constitution, laws and treaties of the United States."

We are of opinion, therefore, that the validity of an election to determine the county-seat of a county in Dakota under the laws of the Territory, when presented to the courts in the forms prescribed by those laws, becomes a subject of action within the jurisdiction of the territorial court. As thus presented, it is a case of controversy between an elector of the county and its commissioners, and the judgment thereon of the District Court of the Territory was subject to appeal to its Supreme Court. Whether the judgment of that court can be reviewed here must depend upon the act of Congress of March 3, 1885 23 Stat. 443, c. 355, which provides as follows:

"SEC. 1. That no appeal or writ of error shall hereafter be allowed from any judgment or decree in any suit at law or in equity in the Supreme Court of the District of Columbia, or in the Supreme Court of any of the Territories of the United States, unless the matter in dispute, exclusive of costs, shall exceed the sum of five thousand dollars.

"SEC. 2. That the preceding section shall not apply to any case wherein is involved the validity of any patent or copyright, or in which is drawn in question the validity of a treaty or statute of, or an authority exercised under, the United States; but in all such cases an appeal or writ of error may be brought without regard to the sum or value in dispute."

The objection that no Federal question is involved undoubtedly has reference to the second section of the above act, which provides that the appellate jurisdiction of this court over cases from the territorial courts shall not be determined by the amount in dispute, if the validity of a treaty or a statute of, or an authority exercised under, the United States, is drawn in question, but that in such cases an appeal or writ of error may be brought without regard to the sum or value in dispute. No such question being involved, our appellate jurisdiction in this case depends upon whether the amount in dispute, exclusive of costs, exceeds the sum designated. By matter in dispute is meant the subject of litigation, the matter upon which the action is brought and issue is joined, and in relation to which, if the issue be one of fact, testimony is taken. It is conceded that the pecuniary value of the matter in dispute may be determined, not only by the money judgment prayed, where such is the case, but in some cases by the increased or diminished value of the property directly affected by the relief prayed, or by the pecuniary result to one of the parties immediately from the judgment. Thus a suit to quiet the title to parcels of real property, or to remove a cloud therefrom, by which their use and enjoyment by the owner are impaired, is brought within the cognizance of the court, under the statute, only by the value of the property affected. *Alexander* v. *Pendleton*, 8 Cranch, 462; *Peirsoll* v. *Elliott*, 6 Pet. 95; *Stark* v. *Starrs*, 6 Wall. 402; *Jones* v. *Bolles*, 9 Wall. 364, 369, and *Holland* v. *Challen*, 110 U. S. 15. So in a case impeaching the right to an office, the amount of the salary attached to it is considered as determining the value of the matter in dispute. Thus in *Smith* v. *Whitney*, 116 U. S. 167, 173, where the application was for a writ of prohibition restraining proceedings by court-martial against an officer, an objection being taken to the appellate jurisdiction of this court on the ground that the subject matter of the suit was incapable of pecuniary estimation, the court, by Mr. Justice Gray, replied: " The matter in dispute is whether the petitioner is subject to a prosecution which may end in a sentence dismissing him from the service, and depriving him of a salary,

as paymaster-general during the residue of his term as such, and as pay inspector afterwards, which in less than two years would exceed the sum of five thousand dollars. Rev. Stat. §§ 1556, 1565, 1624, arts. 8, 22, 48, 53. The case cannot be distinguished in principle from those in which it has been held that a judgment awarding a peremptory writ of mandamus to admit one to an office, or a judgment of ouster from an office, might be reviewed by this court upon writ of error, if the salary during the term of the office would exceed the sum named in the statute defining its appellate jurisdiction. *Columbian Ins. Co.* v. *Wheelwright*, 7 Wheat. 534; *United States* v. *Addison*, 22 How. 174." Not doubting the correctness of the doctrine thus stated, we do not perceive how it can help the appellants. It is true they represent the county, but it is impossible to state any rule, by which the benefit the county may gain, or the damage it may suffer from the result of the election contested, can be estimated. The fact that the county may acquire or lose a parcel of land in Aberdeen exceeding in value $5000, with the building thereon, by the conditional conveyance of that city, according as the county seat is kept at or removed from the place designated as county seat by the election, the validity of which is contested, does not obviate the difficulty. The acquisition or loss of the land in question is not a necessary consequence of the election for the county seat, such result not being created by law, but by a mere accident arising from a voluntary gift by Aberdeen, made contingent upon the removal of the county seat to that place and its continuance there. In *Smith* v. *Whitney*, the salary was given by the law and went with the tenure of the office. A promise by a third person to grant to a litigant certain lands or make particular donations in case of a successful prosecution of a suit will not confer jurisdiction on this court to review the judgment, if without such promise or conditional donation the court would not have the requisite jurisdiction. We think, therefore, there is not in the case such an amount in dispute as to enable this court to take jurisdiction of the appeal. Upon this ground the appeal must be dismissed.

It is not necessary, therefore, to consider the alleged refusal

of a majority of the county commissioners to prosecute the appeal, and their application to the court below to vacate the order allowing it. The appeal had been perfected, and the jurisdiction over the cause thus transferred to this court, before the attention of the court below was called to the action of the majority. Whether such majority could afterwards authorize a withdrawal of the appeal, holding the relation the commissioners do to the county, need not now be discussed.

But there is a ground, not taken by the respondent, which forces itself upon our consideration, and that is, that the judgment of the Supreme Court of the Territory is not in form a final judgment. It not merely reversed the judgment of the District Court, but remanded the cause to that court for further proceedings according to law and the judgment of the appellate court. A judgment of a lower appellate court which reverses the judgment of the court of original jurisdiction, and remands the case to it for further proceedings, is not a final judgment. A judgment of reversal is only final when it also enters or directs the entry of a judgment which disposes of the case. On this ground, therefore, as well as on the previous ground, the appeal must be

*Dismissed.*