## CHESAPEAKE & DELAWARE CANAL CO. v. GRING.

(Circuit Court of Appeals, Fourth Circuit. February 15, 1908.)

No. 746.

1. COURTS—JURISDICTION OF FEDERAL COURTS—AMOUNT OR VALUE IN DISPUTE.
    A bill by the owner of a number of tugs and barges employed in navigation which required them to pass through defendant's canal to enjoin defendant from enforcing certain alleged illegal regulations and charges states a cause of action in the nature of a continuing trespass, and, where it shows that complainant is subjected to charges owing to such exactions amounting to some $1,600 per year, it discloses a sufficient amount in dispute to give a federal court jurisdiction.
    [Jurisdiction of Circuit Courts as dependent on the amount in controversy, see notes to Auer v. Lombard, 19 C. C. A. 75; Tennent-Stribling Shoe Co. v. Roper, 36 C. C. A. 459.]

2. CANALS—REGULATIONS OF CANAL COMPANY—VALIDITY.
    A regulation of a canal company requiring all barges to be passed through its locks by mules or horses *held* reasonable and valid as applied to barges which were but a very few inches less in width than the locks, necessitating careful handling to prevent injury to the vessels or locks.

3. SAME—CHARTER POWERS OF COMPANY—TOLLS.
    Under the charter of a canal company authorizing it to charge toll for every boat or vessel passing through its canal, it had power to charge toll for tugs when towing other vessels through.

4. SAME.
    Under the charter of a canal company which makes its canal a public highway, it has no power to adopt a regulation prohibiting barges not the property of the owner of the tug having them in charge from being towed

through the canal by such tug, and requiring them to be turned over to a particular towing company to be taken through.

Cross-Appeals from the Circuit Court of the United States for the District of Maryland.

See 129 Fed. 996.

Andrew G. Gray (Bond, Robinson & Duffy, George L. Crawford, and Ward & Gray, on briefs), for Chesapeake & Delaware Canal Co.

Robert H. Smith, J. C. McLanahan, and Jacob France, for Charles Gring.

Before PRITCHARD, Circuit Judge, and BRAWLEY and PUR-NELL, District Judges.

BRAWLEY, District Judge. Charles Gring, a citizen of New Jersey, and the owner of certain tugboats and barges, engaged in the business of the transportation of lumber and other articles of merchandise between ports in the states of North Carolina, Virginia, Maryland, and Pennsylvania, filed a bill of complaint against the Chesapeake & Delaware Canal Company, a corporation chartered under the laws of the states of Maryland, Pennsylvania, and Delaware, and the owner of a canal or waterway connecting the Chesapeake Bay and the Delaware Bay, praying, among other things, for an injunction restraining the canal company from enforcing its regulation requiring that a barge when coming to the canal in tow of a tug owned by a person other than the owner of the barge be delivered to a tug of the Canal & Back Creek Towing Company, to be towed through the canal, also from collecting charges for towing barges through the locks of the canal, and from charging toll upon the tugboats going through the canal whether with or without barges in tow, and for an accounting for moneys paid by him on account of such alleged illegal exactions. The decree of the court below granted some of the relief prayed, and refused others. The assignments of error in the appeal and cross-appeal bring before us the questions to be determined, each of which will be considered in order.

The first error assigned is in overruling the demurrer of the respondent to the bill of complaint, which raises the question of jurisdiction; the contention being that the amount involved is less than $2,000. The averment of the bill is that the losses and damage from the alleged unlawful acts of the defendant respondent far exceed the sum or value of $2,000, exclusive of interest and costs. The evidence shows that Gring is the owner of 11 barges and 2 tugboats, of the value of about $118,000, all of which were built by him especially for trading through the Chesapeake and Delaware Canal, and so constructed that, if they are not permitted the use of the canal, their value will be greatly lessened; that he does not intend to diminish his outfit, but intends to continue in the business if he is not driven out of the canal; that for three years, from June 16, 1902, to September 3, 1905, the towing charges paid by Gring or deducted from his towing bills for barges taken from him because said barges were not owned by him, and sent through the canal in tow of a tug of the Canal & Back Creek Towing Company, amounted to $3,814; that

the amount of tolls paid by him on his tugs amounted on an average to something over $200 a year each during the three years, and that the amount paid by him for lock towage amounted to something over $200 per year. It is clear from the evidence that if the complainant had succeeded in obtaining the injunction prayed for, covering the three points enumerated, he would save about $1,600 a year, and that, if his prayer for an accounting for the moneys paid out had been granted in full, the amount paid out was something over $7,500. "By matter in dispute," says the Supreme Court in Smith v. Adams, 130 U. S. 175, 9 Sup. Ct. 569, 32 L. Ed. 895, "is meant the subject of litigation, the matter upon which the action is brought and issue is joined, in relation to which, if the issue be one of fact, testimony is taken. It is conceded that the pecuniary value of the matter in dispute may be determined, not only by the moneyed judgment prayed, where such is the case, but in some cases by the increased or diminished value of the property directly affected by the relief prayed, or by the pecuniary results to one of the parties immediately from the judgment." In Smith v. Whitney, 116 U. S. 167, 6 Sup. Ct. 570, 29 L. Ed. 601, objection was taken to the appellate jurisdiction of the Supreme Court on the ground that the subject-matter of the suit was incapable of pecuniary estimation. That was a case where the amount of the salary of an office, the right to which was impeached, was considered as determining the value of the matter in dispute, and as the prosecution might end in a sentence of dismissal the amount of the salary during the residue of his term, which it was stated would exceed the sum of $5,000, was held to give the court jurisdiction. Mississippi & Missouri Railroad Company v. Ward, 2 Black, 492, 17 L. Ed. 311, was a bill filed by Ward against the railroad company to abate a nuisance caused by the erection of a bridge, and the court held that:

"Where a private party sues in such a case, he cannot be heard unless he shows that he has sustained and is still sustaining individual damage; but, when seeking redress of a continuing trespass and wrong against himself and others, want of a sufficient amount of damage having been sustained to give the federal courts jurisdiction will not defeat the remedy, as the removal of the obstruction is the matter of controversy and the value of the object must govern."

Scott v. Donald, 165 U. S. 107, 17 Sup. Ct. 262, 41 L. Ed. 648, was a case where the state constables, acting under the dispensary law of South Carolina, seized certain liquors imported by plaintiff for his own use, and injunction was sought to restrain them. It was contended that the value in controversy did not exceed the sum of $2,000, but it being alleged in the bill that the complainant intended to import from time to time, as he might need the same for his own use, wines and liquors which it was admitted would exceed the value of $2,000, the court says:

"Such statements sufficiently concede that the pecuniary value of plaintiff's rights in controversy exceed the value of $2,000, nor can it be reasonably claimed that the plaintiff must postpone his application to the Circuit Court as a court of equity until his property, to an amount exceeding in value $2,000 has been actually seized and confiscated, and when the preventive remedy of injunction would be of no avail."

In Texas & Pacific Railroad Company v. Cuteman, 54 Fed. 547, 4 C. C. A. 503, the railroad company sought by injunction to restrain a shipper from prosecuting in a state court a multiplicity of suits for overcharge in freight, and the Circuit Court of Appeals of the Fifth Circuit held that the maintenance of the scheduled rate under which the charges were made was the real subject of dispute, and the value of such maintenance determined the jurisdictional amount of the controversy.

In Lee v. Watson, 1 Wall. 339, 17 L. Ed. 557, the court says:

"By matter in dispute is meant the subject of litigation, the matter for which the suit is brought."

We are of opinion that the demurrer to the jurisdiction was properly overruled, as the subject-matter in dispute was above the jurisdictional amount, and, although it might be that in no one year would the amount claimed to be illegally exacted amount to more than $2,000, the injury to complainant was of the nature of a continuous trespass, the proper remedy for which would be by an injunction, which would avoid the necessity of bringing an indefinite number of suits in the future. The prevention of vexatious litigation and of a multiplicity of suits is a favorite ground for the exercise of the jurisdiction of equity.

The other assignments of error will now be considered. The regulations complained of are claimed by the canal company to have been made in accordance with the following provision of its charter:

"The president and directors of the said company shall have power to enact rules and regulations for the good government of the canal, its harbors, and basins and other appurtenances, and for the general convenience of vessels navigating the same."

The charter of this company has been interpreted and construed in the case of Perrine v. Chesapeake & Delaware Canal Company, 9 How. 176, 13 L. Ed. 90, where Chief Justice Taney says:

"Upon a fair construction of the language of this section, we think this canal was intended to be a public highway, and that every boat or vessel suited to its navigation was to be at liberty to pass through it upon payment of the tolls therein specified."

The first regulation complained of is that which provides that all barges shall be passed through the locks of the canal by mules or horses, and a charge is made of $2 for every barge passing through the three locks. The complainant urges that this regulation is unreasonable, and that the barges can be carried through these locks by the tugs having them in tow, and that the charge is unreasonable. The canal locks, three in number, are 24 feet wide and 220 feet in length, and the testimony shows that the barges belonging to the complainant vary in length from 125 feet to 189 feet, and in width from 23½ feet to 23 feet 10 inches. It thus appears that the complainant's barges, when placed in the exact center of the locks, are distant from the walls from three inches to one inch on either side, and the manager of the canal testifies that it is necessary to have mules to draw these barges into the lock and out of it, because it is impossible for a tug, without damage to the locks or the vessel, to move a barge through these locks.

The court below has found that this is a reasonable regulation, and we concur in this opinion.

The second ground of complaint is that the canal company has no right to charge a toll upon the tugs of the complainant for towing vessels through the canal. It appears from the charter of the company that it is entitled to demand and receive the following tolls:

"Every boat or vessel which has not commodities on board to pay the sum of $4.00; every empty boat or vessel, $4.00, except an empty boat or vessel re-urning, whose load has already paid the tolls affixed, in which case she shall re-pass toll free, provided such boat or vessel shall return within 14 days after paying said toll."

As it cannot be questioned that a tug is a vessel, the toll charged is within the charter rights of the company.

The third ground of complaint is that the complainant was not allowed to tow other barges than his own through the canal, but was compelled to deliver up all barges other than his own to the Canal & Back Creek Towing Company, with which the canal company had a contract by which all such barges were turned over to its charge for towage thereof. We concur in the opinion of the court below that this regulation is not reasonable or necessary, and therefore beyond the powers of the canal company. In justification of this regulation the canal company claims that, in order to accommodate the absolute necessities of three-fourths of the commerce passing through the canal, it was necessary to have a towing company whose charges shall be low, and which will be ready at all times to take barges through without delay, and that it found that, in order to get such service, it was necessary to secure to such towing service a sufficient amount of business at the low prices charged to pay the expenses of the necessary equipment. We find nothing in the charter of the company which justifies it in preventing a tug of proper dimensions from towing through the canal any barge of suitable dimensions and equipment upon the payment of the lawful toll. The canal is a public highway, and the public has the right to the free use of it provided the legal tolls are paid. As said by the Chief Justice in the Perrine Case:

"It is clear that every vessel suited to the navigation of the canal is authorized to pass through upon payment of the toll imposed by law."

The fact, if it be a fact, that the canal cannot be kept up or operated profitably unless provision is made for furnishing motive power for the transportation through the canal of barges unprovided with motive power of their own, may furnish a reason for asking such amendment to its charter as would justify the regulation in question; but, so long as it retains its franchise, it cannot refuse the performance of the duties imposed by its charter, on the ground that the limitations therein would render the operation of the canal unprofitable. It may surrender its charter if the traffic on the canal becomes unremunerative, but restrictions not authorized by the charter cannot be imposed upon those persons desiring to use the canal, able and willing to pay the tolls prescribed, and to comply with the lawful regulations. The rule forbidding any tug carrying more than four barges in tow was held by the court below to be a reasonable regulation, because the character of the

canal is such, we assume, that a longer tow could not be allowed without impairment to the canal itself or to the convenience of the traffic on it. There is no appeal from this decision, and the regulation seems reasonable, but we can conceive of no reason or justification in the regulation forbidding the carrying of any barges not exceeding four in number not belonging to the owner of the tug, and we concur in the view of the court below that this regulation is not reasonable or necessary, and is beyond the powers of the canal company. The other assignments of error were not pressed in the argument before us, and the same are without merit.

The decree of the court below is in all respects affirmed.