## JUDGMENTS OF REVERSAL NOT CONCLUSIVE IN OTHER JURISDICTIONS.

Circuit Court of Lucas County.                -

UNITED STATES MORTGAGE & TRUST CO. v. ANDERSON ET AL;
AND UNITED STATES MORTGAGE & TRUST CO.
v. MESSENGER ET AL.*

Decided, April 4, 1908.

*Foreclosure—Outstanding Claimant a Proper Party—Judicial Sales—
Appraisement—Title—Judgment—Effect of a Reversal in Another
Jurisdiction—Where the Cause is Remanded for Further Proceed-
ings—Final Order—Res Judicata—Judgment Embodied in Man-
date, not in Opinion—State Court not Bound by Adjudication in
Federal Court, When.*

1. Foreclosure proceedings under the Ohio statutes contemplate an ap-
praisal and sale of the entire land mortgaged, and not merely the
equity of redemption; and in order that title may be conveyed
without cloud to a purchaser at judicial sale, all persons having
claims against the property are made parties, including an out-
standing claimant, although such claimant derives no title and
makes no claim to title from the defendant in possession or his
immediate predecessors in title.

2. A judgment by a federal circuit court of appeals, reversing the
federal circuit court having original jurisdiction of the contro-
versy and remanding the cause for a new trial, is not a final order
or conclusive adjudication binding on a state court.

*B. A. Hayes*, for plaintiff.                  .
*O. B. Snider*, for Emily O. Butler.
*C. H. Trimble, R. P. Cary* and *C. A. Thatcher*, for Anderson.
*King, Tracy, Chapman & Wells* and *C. W. Everett*, for
Messenger.

WILDMAN, J.; PARKER, J., concurs; KINKADE, J., dissents.
Appeal from Lucas Common Pleas Court.

---

* For other opinions in the same litigation see, *Anderson* v. *United
Realty Co. et al*, 9 C. C.—N. S., 473, and *Anderson* v. *Messinger*,
4 O. L. R., 361.

In these two cases, which were consolidated, two mortgagees, the United States Mortgage & Trust Company and Miss Emily O. Butler, seek to foreclose mortgages upon property with regard to which there has been much controversy in the courts; the rival claimants for the property being Rosewell E. Messenger, at present in possession, and Peter Anderson.

The question was made before us early in the consideration of the cases in this court, to which they were brought by appeal from the court of common pleas of this county, as to whether Peter Anderson, who is not in possession of the property, but who claims to be the owner, may be a party in a suit to foreclose mortgages and marshal the liens and sell the property. The demurrers to the petitions setting up this misjoinder were overruled by the court, the majority of the court entertaining the opinion that an outstanding claimant, although deriving no title from Rosewell E. Messenger and not claiming such, was a proper party in a suit to foreclose the mortgages and sell the land. Recognizing the difference of view entertained by the courts of various states, the judgment of a majority of this court has been, and still is, that our statutes contemplate the appraisal and sale of the entire land in a foreclosure proceeding, and not merely the equity of redemption; that it is the policy of the Ohio law to convey a title to the purchaser at a judicial sale without clouds upon it, if it be possible to avoid them, by bringing into court all parties who have claims against the property. The court united in overruling the demurrers to the petitions, but one of the members of the court based his view upon another ground.

Passing, then, this question as to whether Anderson was a proper party to these suits, we come to the consideration of the various matters which are made contention between Anderson and Messenger, and also between the one defendant or the other or both and the plaintiff.

We are none of us disposed to accept the view of Anderson that there has been an unlawful collusion between these mortgagees, or either of them, and Messenger, to retain the adjudication of the important controversy which has arisen in the state

court. That there is a desire on the part of Messenger, and perhaps those claiming under him, to conduct this litigation in the state court, may be entirely true; and it is equally true that Anderson is evidently solicitous to conduct it in the federal court, each party relying to some extent upon favorable decisions which have been already obtained, in one court in favor of Messenger, and in the other in favor of Anderson.

In the case between these parties, *Anderson* v. *Messenger*, 146 Fed. Rep., 929, there is a substantial recital of the history of transactions involving the title to this property, and in a decision rendered by this circuit court, *Anderson* v. *Realty Co.*, 9 C. C.—N. S., 473, reference was made to the recital in the federal court as to such history. It is not necessary for this reason to attempt any resume of the facts involved in the controversy.

Some new evidence has been offered upon the trial before us, but I will not take time to review it. It bears especially upon the question whether or not a certain indebtedness from Charles Butler to Henry Anderson was ever entirely paid; and also, whether a deed made by order of court to Henry Anderson was designed to convey an absolute title, or whether he held the property in trust as his security for the payment of the indebtedness referred to. There is no evidence newly offered that I now recall that bears upon any other controversy between the parties.

Prior to the former consideration of the controversy between Messenger and Anderson by this court, the judgment of the United States Circuit Court of Appeals, *Anderson* v. *Messenger*, *supra*, had been rendered, but no claim was made to us at that time that such judgment in the federal court in any way precluded our consideration of the case before us. This was a proceeding in error to reverse a judgment which had been rendered in favor of Messenger and against Anderson in the court of common pleas, and involved an examination of the facts disclosed to the court of common pleas to determine whether the judgment of that court in favor of Messenger was justified. We have now before us two claims of prior adjudication: On the one hand, a claim in behalf of Anderson that the judgment in the federal court to which reference has been made was a

final adjudication of the questions of law now litigated, and that this court is estopped on the principle of *res adjudicata* from entertaining the claims of Messenger or those of his mortgagees; while on the other hand, it is insisted by counsel for the mortgagees and for Messenger that the original judgment rendered by the court of common pleas of this county on March 31, 1906, a date prior to the judgment of the federal circuit court of appeals, was itself a final adjudication of the controversy and that that judgment has never been disturbed but, on the contrary, was affirmed by this court so as to be preserved in full force and validity. As to this last contention, we are not altogether satisfied with the condition of the pleadings to support the claim of Messenger as to *res adjudicata*.

We are quite clear that the judgment of the federal court of appeals was not a final judgment. The nature of that judgment and its effect constitute the most important of the questions which have remained for our consideration. It was not a final judgment, because the proceeding was in the federal court of appeals to review a judgment which had been rendered in the United States Circuit Court, and upon the conclusion of the consideration of the case by the court of appeals the cause was remanded to the circuit court for a new trial. We entertain no doubt that when so remanded the circuit court had full jurisdiction, not only to receive evidence which had been received under the issues presented to the circuit court of appeals, or any other relevant evidence, but also to permit amendment in its discretion of the claims of the litigants; and indeed it has been said to us that a new issue was made in the United States Circuit Court— an issue which has not yet been there determined, to-wit, the claim of Messenger that the judgment of the Court of Common Pleas of Lucas County, Ohio, constitutes a final adjudication of the controversy between Messenger and Anderson. Inasmuch also as new evidence has been offered to us, as already stated, it may be deemed highly probable that new evidence will be offered in the United States Circuit Court as to the nature of Henry Anderson's title, upon the question whether the deed to him was a trust deed or conveyed an absolute fee simple, and

also whether, if it was a trust deed, the conditions attaching to it had been fully satisfied. It is possible that in the United States Circuit Court there may be new evidence in aid of the construction of the will of Henry Anderson. So that all these matters have been preserved for contention between the parties and the introduction of evidence and the amending of pleadings, by the judgment of reversal and the mandate of the circuit court of appeals returning the cause to the circuit court for a new trial.

Counsel for Anderson, among citations which I will not take time to review, cites the case of *Haley* v. *Kilpatrick,* 104 Fed. Rep., 647, in which it was held, as appears by the first paragraph of the syllabus:

"A second appeal or writ of error in the same case only brings up for review the proceedings of the trial court subsequent to the mandate, and does not authorize a reconsideration of any question, either of law or fact, which was considered and determined on the first appeal or writ of error, notwithstanding a contrary decision of such question in the meantime by a state court in a different case."

Much reliance is placed by counsel upon this case, and in courtesy we should give attention to it with a view to see what bearing it has upon our action.

What was "considered and determined" in the federal court of appeals in the case which I have cited? And, I might add, in a hearing of a second like proceeding to reverse the circuit court's judgment, in which again the circuit court of appeals sustained the contention of the plaintiff in error, Anderson, and again remanded the cause to the circuit court for a new trial.

There is no lack of decisions of the federal court, and we have examined a number of them in addition to those cited by counsel, holding substantially that a reversal of the judgment of a lower court, either by the Supreme Court or by the court of appeals, is not a final adjudication of the controversy. It does seem to be held in some of these adjudications, as indicated in the case of *Haley* v. *Kilpatrick, supra,* that the question which

was in fact considered and determined in the judgment of the appellate court will be binding, not only upon that court in any future adjudication, but also upon the subordinate courts, and that it is not merely a matter falling under the principle of *stare decisis,* a principle enunciated which is to be received and considered with respect, but not having a conclusively binding authority.

It is urged by counsel for Anderson that the language of the mandate of the circuit court of appeals conclusively makes the opinion rendered by the court, showing certain conclusions as to the facts and law, a part of the judgment of the court.  The language of the mandate in each of the two cases wherein the circuit court of appeals rendered judgment, so far as this question is concerned, was as follows:

"On consideration whereof it is now here ordered and adjudged by this court that the judgment of the said circuit court in this cause be and the same is hereby reversed with costs, and the cause is remanded to the said circuit court with directions to award a new trial.  You therefore are hereby commanded that such proceedings be had in said cause in conformity with the opinion and judgment of this court as according to right and justice and the law of the United States ought to be had, the said writ of error notwithstanding."

Emphasis is placed upon the use of the word "opinion" in the mandate.  It is contended that by the phraseology used the opinion was made a part of the judgment; that the lower court was bound to follow the opinion as well as the judgment, and upon any attempted litigation of the cause in any other court, whether of the United States or any state, that opinion must be deemed to express the law of the case and the conclusion of the court as to all facts in controversy, unless such conclusion as to the facts should be disturbed by additional evidence upon any rehearing in the court below.  This contention has been of sufficient interest and importance to justify our search of some of the federal authorities to determine whether the views entertained by counsel for Anderson in this respect are well founded.

The case of *Smith* v. *Adams,* 130 U. S., 167, gives as the holding of the federal court of last resort that:

"A judgment of a lower appellate court which reverses the judgment of the court of original jurisdiction, and remands the case to it for further proceedings, is not a final judgment."

On page 177 Mr. Justice Field, as reported, used these words, speaking of the judgment of the lower appellate court:

"It not merely reversed the judgment of the district court, but remanded the cause to the court for further proceedings according to law and the judgment of the appellate court. A judgment of a lower appellate court which reverses the judgment of the court of original jurisdiction, and remands the case to it for further proceedings, is not a final judgment. A judgment of reversal is only final when it also enters or directs the entry of a judgment which disposes of the case."

No express language is used in the mandate, so far as appears, connecting the opinion rendered by the judge of the appellate court with the judgment of the court, but we have some cases where there is some such indication. The case of *Tampa Waterworks Co.* v. *City of Tampa*, 124 Fed. Rep., 932, seems to have been a case in which a contention somewhat similar to the one at bar was urged. A brief statement of this case as embodied in the first paragraph of the syllabus seems essential to a full understanding of the views entertained by the court, which was the Circuit Court of Florida, Southern Division:

"Plaintiff brought suit in the state court to restrain defendant from enforcing a certain city ordinance fixing the maximum rates which plaintiff should charge for water supplied to patrons in defendant city, on the ground that the passage of the ordinance was a violation of plaintiff's contract rights. A demurrer was filed to the bill, which was overruled, and a final decree of injunction rendered. On appeal the judgment was reversed, and the trial court directed to sustain the demurrer and permit further proceedings. On remand of the case the bill was dismissed, and a final decree rendered, from which plaintiff appealed, in order that the Supreme Court might render a final decision, from which a writ of error might be prosecuted to the Supreme Court of the United States. Pending such appeal plaintiff sued in the federal court to restrain the city from enforcing such ordinance, on the ground that the rates fixed were unreasonable, and operated as a taking of plaintiff's property without due process of law. *Held:* That the prior suit, while still pending, was not *res judicata* or a bar to the second."

On page 935, Judge Pardee, who rendered the opinion, says:

"The Supreme Court having remanded the cause for further proceedings, the decision was not final, and although a federal question was clearly involved no writ of error to review the same in the Supreme Court of the United States was permissible."

And towards the bottom of the same page he uses this language:

"The decree of the Supreme Court on the former appeal was as follows—

" 'The interlocutory decrees granting the primary injunction and overruling the demurrer to the bill, as well as the final decree perpetuating the injunction and awarding costs against the city, are reversed, and the cause is remanded with directions to sustain the demurrer to the bill and *for such further proceedings* as may be agreeable to equity practice and consistent with this opinion.' "

And then the judge having made this quotation, says:

"It is not necessary to cite further authority to the effect that a decree of an appellate court remanding a cause for further proceedings is not a final decree, and can not be sustained as *res judicata* in any other court. Certainly, the views of judges, as expressed in opinions and not embodied in a decree, are not *res judicata*. Such views may be conclusive on the court which announces them, and on inferior courts of the same jurisdiction, but they are subject to doubt and denial in other courts."

As long ago as 1840 in a decision in which Taney, J., delivered the opinion of the court, we have an indication of the extent to which the Supreme Court of the United States deemed that the opinion of a judge expressed in connection with a judgment rendered by the court might be considered and used by the court to which a cause was remanded. The case is *West v. Brashear,* 39 U. S. (14 Pet.), 51:

"The mandate of the Supreme Court to the circuit court must be its guide in executing the judgment or decree on which it issued."

I invite especial attention to this language:

"The mandate is the judgment of the Supreme Court, transmitted to the circuit court; and where the direction contained in it is precise and unambiguous, it is the duty of the circuit court to carry it into execution, and not to look elsewhere for authority to change its meaning. But when the circuit court are referred to testimony to ascertain the amount to be decreed, and are authorized to take more evidence on the point, it may sometimes happen that there will be some uncertainty and ambiguity in the mandate; and in such a case, the court below have unquestionably the right to resort to the opinion of the Supreme Court, delivered at the time of the decree, in order to assist them in expounding it."

An examination of the case will show that embodied in the mandate was a somewhat uncertain statement of what was to be done in the court below, and that it was almost imperatively necessary for the guidance of the court to which the cause was remanded, that it should have recourse to the opinion for a thorough understanding of the mandate, but we can not escape the conclusion of the Supreme Court that the judgment of the appellate court was not the opinion or any part of it, but that it was the mandate itself, and the Supreme Court held clearly that if a mandate is unambiguous and precise, it is the duty of the lower court to carry it into execution, and not to look elsewhere for authority to change its meaning.

If that be true, *a fortiori* it would seem that the opinion is not a conclusive adjudication to be followed and obeyed by courts of other jurisdictions, as for instance, the court of a state as distinguished from the federal court.

The case of *McComb* v. *Knox Co.*, 91 U. S., 1, is a case which went to the Supreme Court from this state, in which the Supreme Court of Ohio had reversed the decision of a lower court and remanded it. The lower court followed the views of the Supreme Court, rendering the kind of judgment indicated in the opinion, and an attempt was then made to carry the case, which involved some federal question, to the Supreme Court of the United States, and it was there held as I read:

"The judgment of the Supreme Court of a state reversing that of the court of common pleas and remanding the cause for further proceedings according to law is not final; nor can the judgment subsequently rendered by the inferior court be re-examined here."

Of course that last clause is based upon the fact that a case can not be carried to the Supreme Court of the United States to reverse the judgment of a court which is not of final resort in the state. On page 346, Waite, J., says in his opinion:

"The court of common pleas is not the highest court of the state; but the judgment we are called upon to re-examine is the judgment of that court alone. The judgment of the Supreme Court is one of reversal only. As such, it was not a final judgment. * * * The common pleas was not directed to enter a judgment rendered by the Supreme Court and carry it into execution, but to proceed with the case according to law. The Supreme Court, so far from putting an end to the litigation, purposely left it open. The law of the case upon the pleadings as they stood was settled; but ample power was left in the common pleas to permit the parties to make a new case by amendment. In fact, the cause was sent back for further proceedings because of the suggestion by McComb that he might want to present a new defense by amending his answer."

It seems that he did not amend his answer and that the judgment of the Supreme Court was followed and respected by the court below.

I cite, also, *Clark* v. *Kansas City*, 172 U. S., 334, a case which went to the Supreme Court of the United States from the Supreme Court of the state of Kansas. The syllabus reads:

"As the laws of Kansas permit an amendment of the plaintiff's pleadings in the court below after the overruling by the Supreme Court of a demurrer to them, and as the Supreme Court of the state, in deciding this case, did not take that right away, it follows that the judgment of the state court was not final and that this case must be dismissed for want of prosecution."

On page 336, McKenna, J., speaking for the court, says:

"The defendants in error, however, object to the jurisdic-

tion of this court, and urge that the judgment appealed from is not a final one, and is not therefore reviewable in this court.

"It is further urged that the record does not show that anything was done in the lower court after decision in the Supreme Court, but that error is prosecuted directly to the judgment of the Supreme Court, and that that determined only a question of pleading, and that its direction has not yet been acted on, and that no judgment of any kind has been entered against Wyandotte township or school district No. 9.

"The law of Kansas prescribing action on demurrer is as follows: 'If the demurrer be sustained, the adverse party may amend, if the defect can be remedied by way of amendment, with or without costs, as the court, in its discretion, shall direct.'

"In *Bostwick* v. *Brinkerhoff*, 106 U. S., 3, it was decided that 'the rule is well settled and of long standing that a judgment or decree to be final, within the meaning of that term, as used in the acts of Congress giving this court jurisdiction on tween the parties on the merits of the case, so that if there should be an affirmance here, the court below would have nothing to do but to execute the judgment or decree it had already rendered,' for the support of which many cases were cited; and further: 'If the judgment is not one which disposes of the whole case on its merits, it is not final. Consequently, it has been uniformly held that a judgment of reversal, with leave for further proceedings in the court below, can not be brought here on writ of error.'"

With the view which we entertain that the judgment of the federal court of appeals can not be deemed a final adjudication so as to bind us,-it is not necessary that we should pay attention to the contention of counsel for Messenger that even if it be final it is so only as to the legal title and right to possession of the property and does not affect any equitable claims of Messenger, a contention which was ably argued, and supported by the case of *Witte* v. *Lockwood*, 39 Ohio St., 141.

Although as I stated at the outset some new evidence has been offered to us which was not disclosed in the record when we originally passed upon the title in *Anderson* v. *Realty Co.,* *supra*, we are not thereby led to abandon the conclusions as to the facts and law which we then entertained. On the contrary, at least so far as concerns the nature of the title originally

taken by Henry Anderson, we feel fortified in the opinion which was then expressed and the judgment thereon rendered. We are not disposed to depart from those conclusions. Our view is now, as then, that Henry Anderson took this title in trust to secure the payment to him of the indebtedness from Butler; that by the will of Henry Anderson, Peter Anderson, his grandson, took no title; and also that the trust has been discharged by full payment of the indebtedness from Butler to Henry Anderson, and that the title should be made absolute in Messenger by reason of the intermediate conveyances from the trustees and heirs of Henry Anderson to Bronson, and from Bronson's heirs to Messenger.

In the suit, as it has been presented to us at this time, we have been somewhat embarrassed by the fact that injunctions have been allowed by the federal circuit court to restrain the litigation in the state court as to a large part of the property described in the mortgages. We feel quite clear that neither the United States Mortgage & Trust Company nor Emily O. Butler are bound by those restraining orders, and it has seemed difficult in attempting to enforce the mortgages by foreclosure, by marshalling the liens and sale of the real estate and distribution of the proceeds, to avoid any interference with the questions sought to be litigated in the federal court. We entertain the highest respect both for the federal circuit court and court of appeals, and have no wish or disposition to enter into any controversy with either, or any difference of view, and from all that has been said and done by counsel upon either side in the litigation before us, we have gathered the impression that there is no disposition to commit any breach of the order which has been made to restrain the parties against whom the order was directed.

Our finding will be as I have indicated. The judgment will be that the mortgages of the United States Mortgage & Trust Company and Miss Emily O. Butler be foreclosed; that the liens be found according to their dates; the land appraised and sold according to law; that the proceeds of such sale be distributed first, to the payment of taxes and costs and the pay-

ment of the mortgage lien, and that any residue thereof be held to abide the further order of this court, and that the plaintiffs and Messenger have judgment for costs against Anderson.

MR. EVERETT: How about the quieting of title?

THE COURT: And as to the prayer of Messenger to have his title quieted, the same is granted so far as it concerns the parcels of property not in litigation in the federal court, and as to appeals and writs of error, must terminate the litigation be-the residue of the property, the court reserves its decision, and the cause as to all matters now undetermined will be continued.

KINKADE, J., dissenting.

I do not concur in the finding by the majority of the court that Peter Anderson is a proper party defendant in this case. In my opinion neither the plaintiff nor any of the cross-petitioners in this action can compel Peter Anderson against his will to come into this case and here try out his adverse title with Messenger or with any other party to the action. If Peter Anderson can be compelled to do this in this action, then I agree with the conclusions reached by the court as now stated in the opinion on all other questions which were presented by counsel at this hearing of the case for our consideration. For the reason stated I desire it noted that I dissent.