**CONGAREE BROADCASTERS, INC.,**
**d/b/a WSCQ–FM, Plaintiff,**

v.

**TM PROGRAMMING, INC., Defendant.**

**Civ. A. No. 77–1214.**

United States District Court,
D. South Carolina,
Columbia Division.

Aug. 5, 1977.

Rawl, Purcell & Harman, Lexington, S.C., Michael W. Tighe, Callison, Tighe, Nauful & Rush, Columbia, S.C., for plaintiff.

C. Pinckney Roberts, Mark L. Archer, Dial, Jennings, Windham, Thomas & Roberts, Columbia, S.C., for defendant.

**ORDER ON PLAINTIFF'S MOTION**
**TO REMAND**

HEMPHILL, District Judge.

On July 11, 1977, plaintiff herein filed its motion to remand the above styled cause from this court to the Court of Common Pleas for Lexington County, South Carolina, on June 27, 1977. The issue in this case involves the jurisdictional amount requirement set forth in 28 U.S.C. § 1332.[1] Diversity of citizenship has been established and is not an issue.

---

1. 28 U.S.C. § 1332(a) provides: Diversity of citizenship; amount in controversy; costs

   (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10,-000, exclusive of interest and costs, and is between—

  (1) citizens of different States;
  (2) citizens of a State and citizens or subjects of a foreign state;
  (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; . . . .

The case arises out of a programming contract, admittedly entered into by the parties on or about January 12, 1977.[2] Plaintiff alleges that it relies upon the representations of defendant that the latter could furnish expert guidance and advice in programming and give other assistance to plaintiff in its offering to the public for a price of $900.00 per month for twenty-four (24) months, an admitted total of $21,600.00.[3]

In the Complaint, plaintiff says that the programming furnished was unsuitable, and therefore in breach of contract. After receiving the Complaint, on June 27, 1977, defendant filed its Petition for Removal to this court, together with Removal Bond, and accomplished the removal therewith. At the same time, defendant filed in this court its Answer and Counterclaim, and in Paragraph 5, claimed under the contract and admitted that the contract was as recited by plaintiff.[4]

The plaintiff contends that the amount due is only the $1800.00 plus interest and costs set forth in the Complaint. Defendant insists that the total contract, thus $21,-800.00 is the true amount in controversy, that this amount is over $10,000.00, and

thus this court has jurisdiction. The $1800.00 claimed in the Complaint was a deposit admittedly paid by plaintiff when the contract was entered into.

■ This court is not confronted here with a question of whether or not diversity of citizenship existed between the parties at the time the action was commenced, *Mullins v. Beatrice Pocahontas Co.*, 489 F.2d 260 (4th Cir. 1964), but the court is constrained to hold that the value of the consequences from which the litigation resulted be in some instances referred back to the initiation of the litigation. *Smith v. Adams*, 130 U.S. 167, 175,[5] 9 S.Ct. 566, 32 L.Ed. 895.

Defendant contends that not only does plaintiff inject the entire contract into controversy by the Complaint[6] so that in its entirety the contract is in dispute, but that, additionally, defendant, by its counterclaim, places the entire contract in dispute, claiming breach of contract and default by plaintiff with a resulting acceleration. Defendant claims $19,800 plus attorneys' fees, costs, and expenses.

This court is in agreement that the entire contract is in dispute, and thus in litigation. Again referring to *Smith v. Adams, supra,* this court reads:

2. As alleged in paragraph 3 of the Complaint, attached to defendant's counterclaim as an exhibit.

3. The contract provides for a total commitment of $21,600.00.

4. Paragraph 13 of the Answer and Counterclaim, the defendant alleged:
"On or about January 19, 1977, the Plaintiff and Defendant consummated a written contract, attached hereto as exhibit "A" and incorporated herein by reference, which provided that the Defendant was to provide to the Plaintiff for a period of two (2) years certain radio programming services as are more particularly set forth in exhibit "A", or in consideration of the sum of Twenty-One Thousand, Six Hundred ($21,600.00) Dollars." Thus the contract is before the court.

5. See *Smith v. Adams*, 130 U.S. 167, 173–74, 9 S.Ct. 566, 568, 32 L.Ed. 895 (1889), where the court, discussing the meaning of the times "cases and controversies" used in judicial articles the constitution dividing the limitation of the judicial power of the United States, stated:
By those terms are intended the claims or contentions of litigants brought before the

courts for adjudication by regular proceedings established for the protection or enforcement of rights, or the prevention, redress, or punishment of wrongs. Whenever the claim or contention of a party takes such form that the judicial power is capable of acting upon it, then it has become a case of controversy. See also *Mississippi & M. R. Co. v. Ward*, 67 U.S. 485, 492, 2 Black 485, 17 L.Ed. 311, 314, where the court held that the amount of damages do not necessarily control, but the "value of the object [of the controversy] must govern."

6. Paragraph 2 of the Complaint, reads, in part, as follows:
" * * * that the contract which is the subject of this action was to have been performed in the County of Lexington and State of South Carolina * * *"
Paragraph 3 of the Complaint recites that:
plaintiff "did enter into an agreement with Defendant whereby the Defendant agreed to furnish to the plaintiff * * * for and at a price of Nine Hundred and No/100 ($900.00) Dollars per month for two years.

By matter in dispute is meant the subject of the litigation, the matter upon which the action is brought, and issue is joined, and in relation to which, if the issue be one of fact, testimony is taken. It is conceded that the pecuniary value of the matter in dispute *may be determined, not only by the money judgment prayed,* where such is the case, *but* in some cases *the increased or diminished value of the property directly affected by the relief prayed, or the pecuniary result to one of the parties immediately from the judgment.* (Emphasis added.) [130 U.S. 175, 9 S.Ct. 569, 32 L.Ed. 898]

It cannot be reasonably disputed here that the pecuniary result to one or both parties will project a realization, or loss, of more than $10,000. The dispute has reached such form that the judicial power of the United States trial court, the statutory trial court, the district court, is capable of exercising its judicial authority. That authority, gathered from jurisdiction over a dispute of sufficient consequence, is exercised in the processing of the case in the district court.

This principle is repeated in a more recent case of *Beacon Construction Co., Inc. v. Matco Electric Co., Inc.,* 521 F.2d 392, 399 (2nd Cir. 1975) (citing *Smith v. Adams*) wherein it is stated:

We agree with the appellee that the amount in controversy is not necessarily the money judgment sought or recovered, but rather the value of the consequences which may result from the litigation. [399]

This court recognizes that it has long been the popular belief that the rule is that the plaintiff's claim determines the amount in controversy and the question of jurisdiction. *Scott v. Donald,* 165 U.S. 58, 17 S.Ct. 265, 41 L.Ed. 632, 639 [1897]; *McDonald v. Patton,* 240 F.2d 424 (4th Cir. 1957); *Horton v. Liberty Mutual Ins. Co.,* 367 U.S. 348, 353, 81 S.Ct. 1570, 1573, 6 L.Ed.2d 890, 894 (1961).[7] Of course, there is the test of good faith, but in applying the test of good faith the Supreme Court in *St. Paul Mercury*

*Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 289, 58 S.Ct. 586, 82 L.Ed. 845 (1938) propounded the firm doctrine that *if* it appears to a legal certainty plaintiff cannot recover the jurisdictional amount, the case will be dismissed for want of jurisdiction. However, the court commanded that the trial court, having the issue initially before it, must be so certain as to the legal impossibility of recovery as to virtually negative the plaintiff's good faith in asserting the claim. This court has a right to assume, however, that since those cases cited did not present the fullness of the procedural situation here recorded, (by the pleadings, etc., filed in the Office of Clerk of Court), that the issue here presented was not before those courts.

This court cannot ignore the United States Supreme Court cases, *infra,* which state that where the issue arises, the "test of value" is the test by which the court determines whether or not the jurisdictional amount exists. A review of cases at circuit level reveals the same philosophies apply. *Elliott v. Empire Natural Gas Co., et al,* 4 F.2d 493, 495 (8th Cir. 1925), where the court not only quotes from *Smith v. Adams, supra,* and *Mississippi and Missouri Railroad Co. v. Ward, supra,* but discusses an ancient text, known as Foster on Federal Practice, where § 13 of that text states:

\* \* \* The value of the matter in dispute is that of the object of the bill, namely, the value, to the plaintiff, of the right for which he pays protection, or the value, to the defendant, of the acts of which the plaintiff prays prevention.

Moving forward in time to another case in the same circuit, the court finds *Jensen v. New York Life Insurance Co.,* 50 F.2d 512, 514 (8th Cir. 1931) holding that the "value of the matter in controversy" means the pecuniary result *to either party* [emphasis added] which the judgment entered into the case would directly produce, either at once, or in the future. Another case in the same circuit, judicially sound, *United States Fidelity & Guaranty Co. v. Pierson, et al.,* 97 F.2d 560, 563 (8th Cir. 1938), finds the court,

---

7. "The general federal rule has long been to decide what the amount in controversy is from the Complaint itself \* \* \*." See cases collected in West, Federal Digest, Courts § 328.

in interpreting a contract, and sustaining jurisdiction, stating that the dominant purpose of the contract as a whole must be borne in mind, and any attempt to divide it into distinct, separate parts is to obscure and subvert the intention of the contract and defeat the natural and reasonable expectation of the parties; further held that the controversy presented there involved not only the duty to defend the action which might end in liability for a large sum, but the obligation to indemnify, which might take it over the jurisdictional amount of $3,000.00 (limit at that time). An oft cited case of *Ronzio, et al v. Denver & R. G. W. R. Co.*, 116 F.2d 604, 606 (10th Cir. 1940), the court, citing *Smith v. Adams* and *Cowell v. City Water Supply Co.*, 121 F. 53 (8th Cir. 1903), stated that "in determining the matter in controversy, we may look to the objects sought to be accomplished by the plaintiffs' complaint; the test for determining the amount in controversy is the pecuniary result to *either party* [emphasis added] which the judgment would directly produce". Later, in *Ridder Bros., Inc. v. Blethen, et al*, 142 F.2d 395, 399 (9th Cir. 1944) the Circuit Judge (later Supreme Court Justice) Stephens, wrote that the pleading and evidence introduced upon the hearing of the motion to dismiss an action seeking equitable relief must show such required amount to be of the value of the particular and limited thing sought to be accomplished by the action, and that "the value of the 'thing sought to be accomplished by the action' *may relate to either or any party* (emphasis added) to the action." This doctrine was affirmed by the United States Fourth Circuit Court of Appeals, citing *Pierson* and *Blethen* and *Denver, supra*, in *Government Employees' Co. v. Lally*, 327 F.2d 568, 569 (4th Cir. 1964). Finally, the court takes due note of the decision in *Hatridge v. Aetna Cas. & Surety Co.*, 415 F.2d 809, 815 (8th Cir. 1969) in which Circuit Judge (now Supreme Court Justice) Blackmun citing *Blethen, supra*, stated that the value of the things sought

to be accomplished by the action must relate to either or any party to the action. Thus, we have before us the various yardsticks supplied by the various circuit courts, following the Supreme Court of the United States, to determine the amount in the controversy. This court is of the opinion, that the object sought to be accomplished by the controversy, as reflected from the plaintiff's complaint, as well as the defendant's counterclaim, was the determination of the rights of the parties under a contract, which was admittedly in excess of $10,000.

This court has previously discussed the fact that it seems at first blush that the amount claimed by the plaintiff ordinarily controls in determining whether jurisdiction lies in the federal court,[8] and the plaintiff here, seeking remand, would have us hold that the amount of the compulsory counterclaim should not be held to give rise to federal jurisdiction. Discussion of the cases relied on produces a different result. In *Motorist Mutual Ins. Co. v. Simpson*, 404 F.2d 511 (7th Cir. 1969),[9] it seems at first that the court is holding that the jurisdictional amount could not be determined by reference to the counterclaim. A closer examination of the case determines, however, unusual circumstances, in which the defendant objected from the beginning to the federal courts assumption of jurisdiction over the plaintiff's main action on the ground that the amount in controversy was insufficient, and, after the court overruled that objection defendant sought the protection of federal court by pleading in his counterclaim; the court declared that simple justice would demand that the defendant be denied the federal forum under such circumstances.

Nor can this court rely on *Insurance Co. of North America v. Keeling*, 360 F.2d 88 (5th Cir. 1966), as in that case the insured's counterclaim was for *less* than the jurisdictional amount and the court held that it could not be added to the plaintiff's claim

---

8. See *Massachusetts State Pharmaceutical Assn. v. Federal Prescription Service*, 431 F.2d 130 (8th Cir. 1970).

9. See additional cases collected under Note 847, 28 U.S.C. § 1332 appendix.

to give a jurisdictional figure of over $10,-000.

 Under the cases cited and the philosophy which this court finds applicable, this court holds that if the complaint, or the counterclaim, reveals that the "value of the [amount] in controversy" is more than $10,-000.00, and diversity of citizenship is present, either party has access to this forum, plaintiff by initially filing, or defendant by removing, since the object of the litigation is to determine the rights of the parties to a thing or things of the value of more than $10,000, exclusive of interest and court costs. This court holds as a matter of law, irregardless of which party presents the claim of over $10,000.00 to the court, with diversity of citizenship established, and good faith as a salient factor, the authority of this court applies. *See, Horton v. Liberty Mutual, supra,* and related cases. As Professor Charles Alan Wright has recognized, *Hatridge, supra,* "this seems the desirable rule, since the purpose of a jurisdictional amount, to keep trivial cases away from the court, is satisfied where the case is worth a large sum to either party." (citing C. Wright, Federal Courts, § 34 (1963).

The effect of this is obvious. It carries out the purpose of the jurisdictional amount as originally conceived by the Congress and (1) shelters this forum from a deluge of petty cases filed, (2) assures that parties seeking this court's application under the diversity statute, and having a sufficiency of controversy to engage the authority of this court, may enter and process. In retrospect, a counterclaim is nothing more nor less than an offensive plea, a defensive complaint, by the defendant.

The motion to remand is denied. The Clerk of this Court will enter the case on the calendar for regular processing.

AND IT IS SO ORDERED.