### NATIONAL LABOR RELATIONS BOARD v. ROBBINS TIRE & RUBBER CO., Inc.

No. 11841.

Circuit Court of Appeals, Fifth Circuit.

May 21, 1947.

Rehearing Denied June 25, 1947.

Gerhard P. Van Arkel, Gen. Counsel, National Labor Relations Board, and A. Norman Somers, Asst. General Counsel, National Labor Relations Board, both of Washington, D. C., and T. Lowry Whittaker, Sr. Atty., National Labor Relations Board, of New Orleans, La., for petitioner.

C. A. Poellnitz, Jr., and W. H. Mitchell, both of Florence, Ala., for respondent.

Before HUTCHESON, McCORD, and WALLER, Circuit Judges.

HUTCHESON, Circuit Judge.

This is another in that long list of enforcement proceedings, in which, galled by the appearance of unfairness[1] made by a record in which the Board acts as both accuser and judge,[2] the employer rebels against the findings of Examiner and Board as arrived at to accomplish the board's "pre-determined purpose of punishing this respondent."

While from a human standpoint, such an approach is understandable, it is calculated on the record before us to generate more heat than light, and not to be very helpful in the discharge of our part in the administro-judicial process the statute prescribes.[3] This, as the statute lays it

---

[1] An appearance which the Administrative Procedure Act, 5 U.S.C.A. §§ 1001–1011, "An Act to improve the administration of justice by prescribing fair administrative procedure," should go far to do away with, if its purpose is given effect.

[2] This court has many times pointed out the anomalous position of the Board, first, as accuser appearing before itself as judge, second, as judge judging its own accusations, and, third, as prosecutor before us insisting that its determinations as judge must be enforced and the difficulties in the way of the Board's reaching results which are just, both in fact and appearance. Magnolia Petroleum Co. v. N.L.R.B., 112 F.2d 545 at 547–550; N.L.R.B. v. Riverside Mfg. Co., 119 F.2d at 302, 304, 305.

[3] " * * * in construing a statute setting up an administrative agency and providing for judicial review of its action, court and agency are not to be regarded as wholly independent and unrelated instrumentalities of justice, each acting in the performance of its prescribed statutory duty without regard to the appropriate function of the other in securing the plainly indicated objects of the statute. Court and agency are the means adopted to attain the prescribed end, and so far as their duties are defined by the words of the statute, those words should be construed so as to attain that end through co-ordinated action. Neither body should repeat in this day the mistake made by the courts of law when equity was struggling for recognition as an ameliorating system of justice; neither can rightly be regarded by the other as an alien intruder, to be tolerated if must be, but never to be encouraged or aided by the other in the attainment of the common aim." United States v. Morgan, 307 U.S. 183, 191, 59 S.Ct. 795, 799, 83 L.Ed. 1211. Cf. Leebern v. United States, 5 Cir., 124 F.2d 505.

down, is to determine whether the Board's findings are supported by evidence and the order is in accordance with law. Of course, even though the findings were supported by evidence, we could not find the order in accordance with law if it appeared that the hearings were conducted unfairly, that is with favoritism to the Union or a determination to sustain the Board in the charges it has filed at the Union's request. Neither could we so find if the findings were without support in the evidence. The fact alone, however, of which Respondent makes so much, that Examiner and Board uniformly credited the Board's witnesses and as uniformly discredited those of the Respondent, though the Board's witnesses were few and the Respondent's witnesses were many, would not furnish a basis for a finding by us that such a bias or partiality existed and therefore the hearings were unfair. Unless the credited evidence, as it does not here, carries its own death wound, that is, is incredible and therefore, cannot in law be credited, and the discredited evidence, as it does not here, carries its own irrefutable truth, that is,

is of such nature that it cannot in law be discredited, we cannot determine that to credit the one and discredit the other is an evidence of bias. We put aside then crimination and recrimination and address ourselves to the case Petitioner presents,[4] the defense Respondent puts forward.[5]

Arguing that the record amply supports its findings that unfair labor practices were engaged in, the Board points with confidence to the record of what was said and done, while the matters under review were transpiring. Respondent insist that the hearings were entered upon and the findings made with a predetermined purpose on the part of Examiner and Board to convict and punish it on trumped up and unsupported charges of unfair labor practices. In support of its position, Respondent insists that in every instance of conflict the Examiner and the Board discredited Respondent's witnesses in favor of those for the Board, though the Respondent's were disinterested and many, and the Board's witnesses were greatly interested and few. In further support of its position, Respondent points to the fact that the two employees whose dis-

---

[4] There were findings in some detail as to incidents connected with a unionization campaign which began about July 1, 1945, and in which Robert H. Crittenden, Jr. was quite active. There were, too, conclusions that immediately upon the commencement of the Union's activities in the plant, the Respondent launched a campaign to forestall the Union's efforts, that this took various forms, including the discriminatory discharge of Crittenden and Johnson, both union members, because of their union membership and union activities. Finally, there was an order requiring Respondent to cease and desist from discouraging membership in, or interfering with its employees in the exercise of their right to join the particular union involved in the controversy or any other, to reinstate Crittenden and Johnson and to make the usual posting of notices.

[5] This, supported by a careful marshalling of the testimony in its favor, was a denial that any unfair labor practices had occurred and particularly that Crittenden and Johnson had been discharged for union activities rather than the cause assigned. In addition, claiming that the case had not been fairly tried, Respondent in his brief has this to say of the trial examiner's report:

"Judicial in theory, the report is a brief for petitioner and nothing more. From the four corners of the report (and without regard to the evidence disclosed by the Record, or to any other extraneous fact), it is a completely studious and labored effort to freeze into a court judgment the prosecuting aims of the Teamsters Union and the Board's attorneys. Every issue of fact and every conclusion of law is decided in favor of the Union and against the respondent. Neither the respondent nor its officers or supervisory employees (in considerable number) are credited with the willingness or ability to tell the truth about anything. Every prosecuting agent is, in the view of the examiner, an angel of light, with whiteness on his wings and truth speaking from his mouth".

As to both petitioner and trial examiner, Respondent after summing up undisputed evidence as he sees it, has this to say:

"The Petitioner and its Trial Examiner seek to brush this undisputed evidence aside and accomplish its predetermined purpose of punishing this Respondent by saying that the evidence shows that this rule was frequently violated by other employees and that it is not shown that such other employees were discharged; thus, by expert finesse the burden of proof is shifted to Respondent."

charges are complained of did do the things they were charged with doing, i. e., talking and loafing during work hours and disturb-in the other employees. It insists that in the face of this proof, the Board could not find that the discharges were on account of union membership of the discharged employees and for the purpose of discouraging union activities, and, therefore, the findings and order may not stand.

It may be taken as settled that the right of an employer to discharge an employee, for cause or without cause, is the same whether the employee is or is not a member of a union. An employer may not, however, discharge or discriminate between employees, whether or not members of a union, for the purpose of discouraging membership in, or action on behalf of, a union. Here there is evidence that the employer was biased against unionization, and the ground of the discharges seems not greatly serious, for though the employees had been cautioned to desist, they had not been threatened with discharge if they did not. Here, too, the discharged persons are union members who have been active in, or sympathetic toward, union affairs. When then the employer discharged them, he did so at the peril of a finding by the Board that since the cause assigned was not one for which discharges were ordinarily made, or even threatened, the employer's antipathy to union membership, interest, or activity had tipped the balance in the scales of causation and had become the causa causans, the real cause of the discharge. It is the law, too, that when, as here, evidence is susceptible of two inferences, one that the discharges were not, the other that they were, for union activities, it is for the Board and not the Court to make the determination whether the cause assigned was the real cause or whether the real cause was antipathy to unions and unionizing activities.

Unfortunately for Respondent's cause, while the record does contain a great deal 'of evidence in support of its position that its attitude was correct throughout and that the discharges were for the cause assigned and not to discourage union membership, the record also contains evidence from which it could be found that Respondent was biased against unionization and that the discharges were because of this. It is settled law that when the record shows such a bias and also shows that men were discharged after their union membership had been brought into question in a manner showing dissatisfaction with and disapproval of it, the findings of the Board that their discharge was for union activities and not for the reason assigned may not be successfully challenged here. On the record the Board's petition should be granted. An enforcement decree may be presented for entry.

WALLER, Circuit Judge (specially concurring).

The issue of the Unionism of the discharged employees is so completely obscured by their obnoxiousness in interfering with other employees and in disregarding the rules that I concur with reluctance in the enforcement of the Board's order. This reluctance is based upon two grounds. First I think the Examiner disregarded the overwhelming weight of credible evidence in making his findings. Second, in spite of pronouncements to the contrary by judges of great name, learning, and position, I do not believe that Article III of the Federal Constitution authorizes Congress to withdraw from the Federal Courts all power to find the truth in "cases and controversies" arising under the Constitution and laws of the United States. In the face of the impelling precedents I have heretofore hesitated to speak my views, and I do so now in full awareness that my giving utterance thereto will doubtless appear bumptious and impertinent, and furthermore that a concurring opinion convinces few, binds no one, and decides nothing. But the sincerity of my belief in the soundness of those views urges me to set them out nevertheless. In so doing, I shall perforce disregard oft-repeated admonitions that a judge of an inferior court should employ his talents in deciding cases rather than in writing legal treatises or essays.

Sections 1 and 2 of Article III of the Constitution provide:

"Section 1. The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish. The judges, both of the supreme and inferior Courts, shall hold their Offices during good behavior, and shall, at stated times, receive for their services, a compensation, which shall not be diminished during their Continuance in Office.

"Section 2. The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority;—to all Cases affecting Ambassadors, other public Ministers and Consuls; —to all Cases of admiralty and maritime Jurisdiction; * * * to controversies between two or more States."

This, according to Justice Story, in Martin v. Hunter, 1 Wheat. 304, 14 U.S. 304, 4 L.Ed 97, "is the language creating and defining the judicial power of the United States. It is the voice of the people of the United States in establishing one of the three branches of their government." Its language, the decision held, was mandatory and Congress could not ignore or deviate from it. Emphasis was placed on the fact that the judicial power "shall be vested" and not "may be vested."

These words vest the whole judicial power of the United States "in one Supreme Court and in such inferior Courts as the Congress may from time to time ordain and establish," whose judges should hold office during good behavior, and whose compensation could not be diminished during their continuance in office.

Since the same section of Article III that vests the judicial power in these Federal Courts provides for the tenure of their judges and the security of their compensation, does it not necessarily follow that only those Federal tribunals that have judges whose tenure and compensation are thus secured may exercise Federal judicial power, and that any tribunal not having a judge appointed during good behavior is not a *Court* that can be vested with this judicial power, regardless of the nomenclature of such tribunal? If so, would it not also follow that a judge who has a tenure of office fixed in years can discharge only administrative duties? Although one may be called "a judge" of The Tax Court or the Court of Customs Appeals, can he constitutionally be vested with judicial power over cases and controversies arising under the Constitution and laws of the United States unless he is such a judge as described in Article III?

I like the definition of judicial power of the Supreme Court of Missouri in the case of State, To Use Of Gentry v. Fry, 4 Mo. 120, that:

"Judicial power can mean nothing more nor less than the power which administers justice to the people, according to the prescribed forms of law—according to their rights as fixed by the law."

The generally used definition of judicial power is that "it is the power of a court to decide and pronounce judgment and to carry it into effect between parties who bring the case before it for decision."

In Todd v. United States, 158 U.S. 278, 15 S.Ct. 889, 891, 39 L.Ed 982, it was said:

"A court is defined to be a place in which justice is judicially administered. It is the exercise of judicial power, by the proper officer or officers, at a time and place appointed by law."

Congress does not seem to have kept the distinction as to what is judicial power and what is administrative power very clearly in mind. The Constitution did not accord to the courts any of the powers of the legislative or executive departments of government, and definitely it was not the purpose of the people in the adoption of the Constitution to undertake to have the courts run or supervise the administrative branches of the government in the discharge of their lawful and appropriate functions. But out of the multitudinous problems of expanding governmental control it is sometimes difficult to discern the dividing line between judicial and administrative functions. It is necessary in carrying on the vast business of the Federal Government that decisions be made

and facts determined by govermental agencies such as the Interstate Commerce Commission, Federal Power Commission, Securities and Exchange Commission, the Tax Court, the National Labor Relations Board, and scores of others, even though their determinations involve the personal and property rights of citizens, and in such of these agencies as have learned to make justice their guiding star in their exercise of judicial, or quasi-judicial, functions, instead of deeming that their main function is the vigorous administration of the Act under which they exist, there is full public confidence.

Unquestionably, Congress may rightfully withhold from Federal Courts jurisdiction of subjects not embraced in the category which by Sec. 2 of Article III of the Constitution was vested in the Federal Courts, for they are courts of limited jurisdiction, having only such power as the Constitution and statutes of the United States have conferred upon them.

But may it withhold jurisdiction of those cases which Sec. 2 of Article III extended to cases arising under the Constitution and laws of the United States and treaties, and to cases affecting ambassadors, public ministers, and consuls, and to cases of admiralty and maritime jurisdiction?

The judicial power by Sec. 2 of Article III expressly extends only to "cases and controversies."

In Osborn v. United States Bank, 9 Wheat. 738, 22 U.S. 738, 6 L.Ed. 204, Chief Justice Marshall, speaking of Article III, said:

"This clause enables the judicial department to receive jurisdiction to the full extent of the Constitution, laws and treaties of the United States, when any question respecting them shall assume such a form that the judicial power is capable of acting on it. That power is capable of acting only when the subject is submitted to it, by a party who asserts his rights in the form prescribed by law. It then becomes a case, and the Constitution declares that the judicial power shall extend to all cases arising under the Constitution, laws and treaties of the United States."

In Smith v. Adams, 130 U.S. 167, 9 S.Ct. 566, 568, 32 L.Ed. 895, Mr. Justice Field stated that by the terms "cases" and "controversies" used in the judicial article of the Constitution defining the limits of the judicial power of the United States "are intended the claims or contentions of litigants brought before the courts for adjudication by regular proceedings established for the protection or enforcement of rights, or the prevention, redress, or punishment of wrongs. Whenever the claim or contention of a party takes such a form that the judicial power is capable of acting upon it, then it has become a case or controversy."

It seems, therefore, that the federal judicial power extends only to *court cases* and *controversies* as distinguished from administrative controversies which have not reached the courts.

This conclusion permits the view that Congress may authorize boards and commissions to decide with finality, and without providing for court review, matters which have not achieved the status of *cases* or *controversies* and which arise within the field committed exclusively to the courts by Sec. 2 Article III. But may Congress, under the Constitution, provide for the bringing of a *case* into the Federal Court for review of a decision by a board on questions arising under the Constitution, laws, and treaties of the United States, meanwhile limiting the reviewing courts to an exercise of only a part of the judicial power vested in them by the Constitution?

The instant case deals with a legal situation where Congress has provided for only a limited judicial review by the courts.

In Martin v. Hunter, supra, Judge Story said:

"If, then, it is a duty of Congress to vest the judicial power of the United States, it is a duty to vest the whole judicial power. The language, if imperative as to one part, is imperative as to all."

Further he says:

"It would seem, therefore, to follow, that Congress are bound to create some inferior courts, in which to vest *all* that jurisdiction which, under the Constitution, is exclusively vested in the United States, and of which the Supreme Court cannot take original cognizance. They might es-

tablish one or more inferior courts; they might parcel out the jurisdiction among such courts, from time to time, at their pleasure. But the *whole judicial power* of the United States should be, at all times, vested, either in an original or appellate form, in some courts created under its authority." (Emphasis added.)

Justice Brewer, in Kansas v. Colorado, 206 U.S. 46, 27 S.Ct. 655, 661, 51 L.Ed. 956, said:

"Speaking generally, it may be observed that the judicial power of a nation extends to all controversies justiciable in their nature, the parties to which or the property involved in which may be reached by judicial process, and, when the judicial power of the United States was vested in the Supreme and other courts, *all* the judicial power which the nation was capable of exercising was vested in those tribunals; and unless there be some limitations expressed in the Constitution it must be held to embrace *all controversies* of a justiciable nature arising within the territorial limits of the nation, no matter who may be the parties thereto." (Emphasis added.)

Nevertheless, there are some half hundred boards and commissions authorized to make findings of fact which are now held to be binding upon the courts in reviewing their actions if such findings "are supported by evidence"—not if supported by the weight of the evidence. And as to the credibility of witnesses there is no latitude afforded the reviewing court, and likewise as to the drawing of inferences it has been held that the findings of the board must be sustained if the inferences drawn by the board or commission are reasonable. Even though the court might be thoroughly convinced that the factual findings of the board are the result of bias, prejudice, or even stultification, it cannot set the findings aside, except for errors of law, if there is any substantial evidence in the record to support the findings. Any evidence, however incredible, is substantial if it is adjudged to have been believed by the Examiner or the Board.

The concept that any part of the judicial power of the United States could be constitutionally vested in a tribunal that is within itself accuser, witness, judge, and jury, is rather disturbing, and the manner in which some of these tribunals have performed must be shocking to those who have plugged so consistently in support of the thesis of bureaucratic infallibility or of specialized competency.

If I am correct in the assumption stated earlier in this discussion that judicial power means the power to administer justice to the people according to the prescribed forms of law, and that the administration of justice requires the court to find the truth, then I submit that any court which cannot review the law and the facts upon which a decision is based is denied the right to exercise the judicial power of administering justice.

Give a partisan examiner or board the right to fix the facts and the right to declare the law may well be but as "sounding brass or a tinkling cymbal". If ascertaining the truth is not the first step in the administration of justice, then I confess that I have no conception of the process. The right to know the truth is an integral and essential attribute of a court of justice. If the judicial power is vested in the courts in all cases and controversies mentioned in Sec. 2 of Article III; if review by a Federal court of the decision of a board is a case or a controversy; if the judicial power is the power to administer justice; and if in the administration of justice it is necessary first to know the truth, how can Congress constitutionally withhold from the courts on review the right to be satisfied as to facts? For to withhold from such courts the right to know the truth and to declare it is to withhold from them a highly essential part of the judicial power, without which the demands of justice cannot be known and served, and the law cannot be discerned and applied.

I submit that Congress may vest in nonjudicial boards and tribunals finality of decisions in all matters which do not come within the traditional concept of cases and controversies unless the decision of such boards and tribunals denies a citizen a right under the Constitution and laws of the United States. But in any instance in which Congress provides for a review in the courts of a case or a controversy aris-

ing out of the subject-matter mentioned in Sec. 2 of Article III, and thereby calls into operation the judicial power—the power and the duty to do justice—it cannot take away from the courts any part of that judicial power without doing violence to the Constitution.

The power, the right, the duty, to do justice, though the heavens fall, are constitutional attributes of the Federal Courts that cannot constitutionally be whittled away in cases before them by denying to such courts the power to find the truth.

In Crowell v. Benson, 285 U.S. 22, text 60, 52 S.Ct. 285, 296, 76 L.Ed. 598 the Court said:

"In cases brought to enforce constitutional rights, the judicial power of the United States necessarily extends to the independent determination of all questions, both of fact and law, necessary to the performance of that supreme function."

See also Ohio Valley v. Ben Avon Borough, 253 U.S. 287, 40 S.Ct. 527, 64 L.Ed. 908; Ng Fung Ho v. White, 259 U.S. 276, 42 S.Ct. 492, 66 L.Ed. 938; Prendergast v. New York Telephone Co., 262 U.S. 43, 43 S.Ct. 466, 67 L.Ed. 853; Tagg Brothers & Moorehead v. United States, 280 U.S. 420, 50 S.Ct. 220, 74 L.Ed. 524; and Phillips v. Commissioner, 283 U.S. 589, 51 S. Ct. 608, 75 L.Ed. 1289.

The right to have the judicial power of the United States called into operation in "all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority;" is conferred by the Constitution [Sec. 2 of Article III]. Since in cases for the enforcement of constitutional rights the judicial power extends to the independent determinations by Federal Courts of all questions of law and fact, and since Sec. 2 of that Article makes that same judicial power extend to all cases arising under the laws of the United States to the same extent it does to all cases arising under the Constitution, it is difficult to see any real difference between the operation of the Federal judicial power in enforcing constitutional rights and the operation of the Federal judicial power in the enforcement of rights under the laws of the United States. The same section that extended the judicial power to all cases arising uner the Constitution extended the judicial power to all cases arising under the laws of the United States, and it seems to me that the right to have the full judicial power of the Federal Courts called into operation to protect constitutional rights is by that same Constitution made available in the decision of all cases that arise under the laws of the United States.

By reason of the failure to recognize and apply the principles which I have sought to state herein, the courts in the review of many cases have been rendered impotent. Courts which were established for the purpose of preventing injustice not only cannot prevent it, but must lend their offices to the commission of injustices, as in the present case in reference to the discharged employee, Burleson Johnson, who, to approximately a dozen employee witnesses, was an irresponsible, incorrigible worry-wart, but who, to the Examiner and the Board, was a member of the Union and privileged to be all that these employees considered him to be, yet immune from discharge.

A finding by an examiner, whether arrived at carefully and skillfully, or through incredible credulity, or simple stultification, should be deemed prima facie correct but should never be substituted in place of the power which the people in their Constitution solemnly and surely committed to their courts.