## NATIONAL LABOR RELATIONS BOARD v. BOOKER.

### No. 12744.

United States Court of Appeals
Fifth Circuit.

Feb. 6, 1950.

Rehearing Denied March 11, 1950.

Rehearing Granted April 10, 1950.

Further Rehearing Denied June 16, 1950.

Charles M. Paschal, Jr., Attorney NLRB, Atlanta, Georgia, David P. Finding, Assoc. Gen. Counsel, NLRB, Washington, D. C., A. Norman Somers, Asst. Gen. Counsel, NLRB, Washington, D. C., for petitioner.

Robert M. Hitch, Jr., Savannah, Georgia, Malberry Smith, Jr., Savannah, Georgia, for respondent.

Before HOLMES, WALLER and RUS-SELL, Circuit Judges.

HOLMES, Circuit Judge.

The order herein sought to be enforced was entered on July 28, 1948. This court has jurisdiction of the proceedings under Section 10(e) of the National Labor Relations Act, 29 U.S.C.A. § 160(e), the unfair labor practices having occurred in Georgia, within this judicial circuit.

On July 3, 1946, the International Brotherhood of Teamsters, Chauffeurs,

Warehousemen and Helpers of America, Local No. 897, hereinafter called Teamsters, filed an amended charge with the National Labor Relations Board. On July 8, 1946, the board issued its complaint against J. A. Booker, hereinafter referred to as respondent, alleging that respondent had engaged in and was engaging in unfair labor practices affecting commerce within the meaning of Section 8(1), (3), and (5), 29 U.S.C.A. § 158(1, 3, 5), and Section 2(6) and (7) of the Act, 49 Stat. 449, 29 U.S.C.A. § 152(6, 7). Copies of the complaint and amended charge, accompanied by notice of the hearing to be had, were duly served upon respondent and Teamsters. On July 16, 1946, the acting Regional Director received a letter signed by respondent denying all of the allegations of the complaint and stating that any action taken with respect to the individuals named therein had no connection with their activities on behalf of labor organizations. This letter constitutes the only answer filed by the respondent.

A hearing was had at Savannah, Ga., in July and August, 1946, before a duly designated trial examiner. The trial examiner issued his intermediate report finding that the respondent had engaged in and was engaging in certain unfair labor practices, in violation of Section 8(1), (3), and (5), of the Act, and recommended that it be ordered to cease and desist therefrom and to take certain affirmative action. Upon exceptions duly filed, the board reviewed the rulings of the trial examiner, and found as a matter of fact that respondent did interfere with, restrain, and coerce his employees in the exercise of their rights guaranteed by Section 7 of the Act, 29 U.S.C.A. § 157; that respondent discriminated against employees Jones, Waters, Smith, Houston, Anderson, C. W. Collins, and C. B. Collins, Jr., in regard to tenure, terms, and conditions of employment, in violation of Section 8(3) of the Act; that another employee, Blackwell, was discharged, not for discriminatory reasons, but because he had engaged in a fist fight with respondent; that Teamsters was at all material times the representative of the employees within Section 9(a) of the Act, 29 U.S.C.A. § 159(a), and that respondent refused to bargain collectively with Teamsters, in violation of Section 8 (5) of the Act.

On the basis of its findings, the board ordered that respondent cease and desist from refusing to recognize and bargain collectively with Teamsters, discouraging membership in same, or in any other manner interfering with, restraining, or coercing, his employees in the exercise of their right to self-organization. The board further ordered that the respondent offer Waters, Smith, and Jones immediate and full reinstatement to their former or equivalent positions, without prejudice to their seniority rights and privileges, with full pay for the period of the discrimination, less net earnings during such period. Respondent was ordered to make whole C. W. Collins, C. B. Collins, Jr., Houston, and Anderson, for any loss of pay they may have suffered by reason of respondent's discrimination against them, by payment to each of them of a sum of money equal to the amount they would have earned as wages during the period from the date of their discriminatory lay-off to the date of their reinstatement, less their net earnings during such period. If the record as a whole contains substantial evidence to support these findings, we are not at liberty to disturb them.

The evidence shows that respondent resorted to numerous devices to impede the efforts of his employees to engage in the freedoms guaranteed to them by Section 7. He interrogated them concerning their union membership, the extent of their organization, the identity and activity of other members; and he threatened liquidation of the business rather than to allow it to be "messed up" by a union. He asked them for a statement of nonmembership in any union, coupled with a request for a discussion regarding wage increases; he promised benefits for members revoking union membership; and he negotiated with a union representative other than the one representing the majority of his employees, besides negotiating with the employees directly, which resulted in the grant of a wage increase. These facts

support the board's finding that respondent did interfere with, restrain, and coerce his employees in the exercise of their rights guaranteed by Section 7 of the Act.

Respondent demoted Jones when he gave Polk the job of dispatcher in Jones' place and left Jones the job of transmitting Polk's orders to the garage. When respondent found out that Jones belonged to the union, he asked him which meant more to him, his job or the union, and said he was not sure that he wanted a union there. Respondent took time to think the matter over, and later called Jones into his office and told him that Polk, the only driver who had refused to join the union, would direct the operation of the busses, and that Jones would transmit Polk's orders to the garage. In the light of these facts, the board found that the demotion was effected entirely because of Jones' membership in the union.

The board found that respondent discriminatorily discharged Waters, who was one of the most active employees in organizing the union, and who played a leading role in the formation of its demands. He was working on a 7-day week basis when he asked Polk for the next Sunday off because his doctor had told him to take some medicine. Polk refused the request unless Waters would bring him a doctor's certificate that he was ill. Waters did not report for duty on that Sunday, and the following day he found a substitute driver in his place. He took his regular trip (his replacement driver accompanying him) until Polk appeared and advised Waters that respondent desired to see him before he ran the route any more. According to Waters' testimony, he had the doctor's certificate with him at that time, and waited all day to see respondent, but without success, and he returned every day during the following week, but never saw respondent, never got an explanation as to why he was taken off the run, and never had a chance to show his doctor's certificate. At the end of the week he asked Polk when respondent was going to see him, and Polk replied: "Well, Waters, I don't think he wants to see you." Waters

did not return again. The board found these facts equivalent to a discharge, many of the issues of fact resulting from the conflicting testimony of Polk and Waters. Being a matter of credibility between them, it was for the board to decide which one to believe, and we cannot disturb their choice in believing Waters, even though we may disagree with its decision. While the law on this subject has been amended, it still does not permit a finding of fact by the board to be set aside if supported by substantial evidence, even though the court on reviewing the record as a whole thinks that the finding is clearly erroneous. The original act provided: "The findings of the Board as to the facts, if supported by evidence, shall be conclusive." 29 U.S.C.A. § 160(e). The present act provides: "The findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive." 29 U.S.C.A. § 160(e). Thus there is no difference in legal meaning and practical effect between the two statutes. National Labor Relations Board v. Columbian, Enameling & Stamping Co., 306 U.S. 292, 299, 59 S.Ct. 501, 83 L.Ed. 660.

Respondent employed Smith, knowing him to be a member of another union. Soon thereafter, Smith began organizational activity on behalf of Amalgamated; and respondent, who in the meantime had assumed that he was free to bargain with the men because of a petition they had signed, was forced to cease negotiating with his committee because of Smith's organizing efforts. Smith, during a period of two days when he was permitted to be off work, signed up about 20 drivers. When Polk learned of this he discharged Smith "just for the things you did the two days you were off work." A week later, respondent gave a dinner for the men, at which they signed another statement to the effect that they were not affiliated with any labor organization, upon which respondent gave them a raise in wages and presented a plan of his own. From the foregoing facts, the board found that respondent discharged Smith because the latter had upset his plan to deal directly with his drivers.

The board rejected respondent's contention that the suspensions of C. W. Collins, C. B. Collins, Jr., Houston, and Anderson, were part of respondent's program to improve his safety record, and found that these lay-offs "were motivated in substantial part by respondent's resentment against Teamsters and that they constituted a part of respondent's course of conduct designed to discourage adherence to Teamsters," in violation of Section 8(3) of the Act. This finding is supported by the fact that respondent deliberately created the false impression that the insurance company rather than he was responsible for the system of penalizing drivers involved in accidents, thus weakening their confidence in the union's ability to protect their interest. None of the accidents was serious; one was nonchargeable against the driver's record, and one was so trivial as not to be included in the adjuster's compilation of accidents. A non-union driver, who had been involved in two similar accidents, was not laid off. The suspensions came summarily, without warning, and for relatively minor accidents. On this matter, we agree with a previous holding of this court in N. L. R. B. v. Robbins Tire & Rubber Co., 161 F.2d 798, 801, wherein it was said:

"Here there is evidence that the employer was biased against unionization, and the ground of the discharges seems not greatly serious, for though the employees had been cautioned to desist, they had not been threatened with discharge if they did not. Here, too, the discharged persons are union members who have been active in, or sympathetic toward, union affairs. When then the employer discharged them, he did so at the peril of a finding by the Board that since the cause assigned was not one for which discharges were ordinarily made, or even threatened, the employer's antipathy to union membership, interest, or activity had tipped the balance in the scales of causation and had become the causa causans, the real cause of the discharge. It is the law, too, that when, as here, evidence is susceptible of two inferences, one that the discharges were not, the other that they were, for union activities, it is for the Board and not the Court to make the determination whether the cause assigned was the real cause or whether the real cause was antipathy to unions and unionizing activities."

Respondent's attitude toward the unionization of his employees, as manifested by his numerous statements and by the many impediments brought on by him, beginning on the first day that he learned of their organization, clearly support a finding that he refused to bargain collectively with Teamsters. Likewise, respondent's dealings with the independent committee of his drivers and with drivers directly, and his grant of a wage raise without prior bargaining with Teamsters, constituted a refusal to bargain with Teamsters, in violation of Section 8(5). The findings of the board being supported by substantial evidence, the petition for enforcement for the order is granted.

### On Petition for Rehearing.

PER CURIAM.

The petition for rehearing is denied except as to the employee Barney Waters. Upon further consideration, for reasons stated in said petition, we have reached the conclusion that said employee was discharged for cause and that our decision approving the order to reinstate him was clearly erroneous. Let the judgment be modified accordingly.

### On Petition for Rehearing.

PER CURIAM.

It is ordered that the petition of the National Labor Relations Board for a rehearing in this case be, and the same hereby is, granted, the rehearing to be had upon briefs. The Board is allowed not exceeding thirty days in which to file its brief, and the Respondent is given fifteen days from the time the Board's brief is filed in which to reply to the same if it deems an answer necessary.

### On Further Petition for Rehearing

PER CURIAM.

It is ordered that the petition of the National Labor Relations Board for a rehearing in the above styled and numbered cause be, and the same hereby is, denied.