### NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

### BUITONI FOODS CORP., Respondent.

No. 13534.

United States Court of Appeals Third Circuit.

Argued Oct. 3, 1961.

Decided Jan. 15, 1962.

---

5. These principles are supported by the cases collected in an annotation in 18 A.L.R. 2d 100, pp. 115 et seq.

Margaret M. Farmer, Washington, D. C. (Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Rosanna A. Blake, Atty., National Labor Relations Board, Washington, D. C., on the brief), for petitioner.

Joseph S. Oberwager, Newark, N. J., for respondent.

Before GOODRICH, STALEY and SMITH, Circuit Judges.

SMITH, Circuit Judge.

This is a proceeding under Section 10 (e) of the Labor Management Relations

Act, 1947, 29 U.S.C.A. § 160(e), for the enforcement of a cease and desist order issued and served pursuant to Section 10(c) of the Act, 29 U.S.C.A. § 160(c). The jurisdiction of the Court is not disputed.

The Trial Examiner, after extensive hearings, found and concluded that the respondent, in violation of Sections 8(a) (1) (2) (3) (4), 29 U.S.C.A. § 158(a) (1) (2) (3) (4), interfered with, restrained and coerced employees in the exercise of the rights guaranteed in Section 7 of the Act, 29 U.S.C.A. § 157; dominated and interfered with the formation of a grievance committee, a labor organization within the meaning of the Act; discriminated in regard to hire and tenure of five named employees; and, discriminated against one of the said employees because he had filed charges with the Board. The findings of fact and conclusions of law are fully set forth in the Intermediate Report.

The Board adopted the findings and conclusions of the Trial Examiner and thereupon entered an order which directed the respondent to cease and desist from the unfair labor practices therein enumerated and to reinstate and make whole the named employees wrongfully discharged. It should be noted that the Board reversed and modified one of the recommendations made by the Trial Examiner. This modification will be separately considered.

The petition for enforcement of the order is resisted by the respondent mainly on the ground that the findings of fact stated in the Intermediate Report are not supported by substantial evidence. It is urged that this Court should not accept the findings of fact as conclusive. The respondent, although solicitously avoiding a direct charge of bias, argues that the Trial Examiner uniformly gave credence and weight to the testimony of the employees and disregarded "the testimony of the opposing witnesses."

■ The latter argument, if supported by the record, would not warrant a rejection of the findings of fact. N. L. R. B. v. Pittsburgh S. S. Co., 337 U.S. 656, 659, 69 S.Ct. 1283, 93 L.Ed. 1602, et seq. (1949); N. L. R. B. v. Newton Company, 236 F.2d 438, 444 (5th Cir. 1956); Sardis Luggage Co. v. N. L. R. B., 234 F.2d 190, 193 (5th Cir. 1956); N. L. R. B. v. Houston & North Tex. M. F. L., 193 F.2d 394, 397 (5th Cir. 1951), cert. den. 343 U.S. 934, 72 S.Ct. 771, 96 L.Ed. 1342; N. L. R. B. v. Robbins Tire & Rubber Co., 161 F.2d 798, 800 (5th Cir.1947). We cannot conclude that the findings of fact are not supported by substantial evidence merely because the Trial Examiner may have believed the testimony offered by General Counsel and rejected as unbelievable, or lacking in persuasive weight, the evidence offered by the respondent. Ibid. The case of Local No. 3, etc. v. N. L. R. B., 210 F.2d 325, at pages 329 and 330 (8th Cir.1954), upon which the respondent relies, is clearly distinguishable on its facts.

■ It is the function of the Board to find the facts and to draw the inferences of which the relevant evidence is reasonably susceptible. There is inherent in this function the responsibility to resolve issues of credibility. N. L. R. B. v. Local 420, etc., 239 F.2d 327, 328 (3d Cir.1956); N. L. R. B. v. Sun Shipbuilding & Dry D. Co., 135 F.2d 15, 25 (3d Cir. 1943); N. L. R. B. v. Ferguson, 257 F.2d 88, 90 (5th Cir.1958); Precision Fabricators, Inc. v. N. L. R. B., 204 F.2d 567, 569 (2d Cir.1953), and the cases cited hereinabove. The resolution of issues of credibility is clearly not for the Court.

The function of the Court is to determine whether or not, on a consideration of the record as a whole, the findings of fact are supported by "substantial evidence." Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951). We have examined the entire record in the instant case, bearing in mind the broad authority vested in the Board and the limited function of the Court.

■ We are convinced by our examination of the record that the findings of

fact are based upon a thoughtful consideration of the evidence as a whole and a discriminating evaluation of the conflicting testimony. We are persuaded that much of the testimony which the respondent apparently considers contradictory of the testimony of the employees was negative, evasive, and lacking in probative value. The findings of fact stated in the Intermediate Report, as well as the conclusions therein summarized, are amply supported by substantial evidence.

The respondent was, and had been since 1944, a party to successive collective bargaining agreements with Local 102, Bakery and Confectionery Workers International Union, the exclusive representative of approximately 120 production and maintenance employees. Such an agreement was in force and effect during the period here in question and until September 1, 1958, when it was supplanted by a new contract.

A number of employees, having become dissatisfied with their representation by the union and the conduct of union representatives, initiated a movement to have Local 102 decertified as the exclusive representative. This movement, initiated some time in September of 1957, was spearheaded by the employees Keating and Calabrese as chairman and assistant chairman, respectively. A petition for decertification, authorized by a majority of the employees, was filed with the Regional Director for the Board on September 23, 1957, and in April of the following year an election was conducted pursuant to Section 9(c) (1) of the Act, 29 U.S.C.A. § 159(c) (1). The employees failed to elect a "collective bargaining representative," and written notice of their action was given the respondent.

It should be noted that on the day prior to the election ninety-six of the employees formally resolved to ."disaffiliate from Local 102" but to "continue in full force and effect" the collective bargaining agreement of November 1, 1956. A copy of the formal resolution was forwarded to the respondent. It is clear from the evidence that the employees did not rescind the collective bargaining agreement.

While the petition for decertification was pending, and prior to the election, the employees Keating and Calabrese, together with several other employees, undertook the leadership of an organizational campaign on behalf of Local 165, American Bakery and Confectionery Workers International Union. They circulated authorization cards among the employees and obtained the signatures of a majority. After the decertification of Local 102 the business agent of Local 165 telephoned Cuneo, Vice President of the respondent, and requested a meeting. The successive efforts of the business agent, in April of 1958, to arrange a meeting were ignored.

When it seemed apparent that the endeavors of Local 165 to gain recognition had been effectively resisted by the executive officers of the respondent, the employees turned to District 50 United Mine Workers of America. This was in the latter part of May and in the early part of June of 1958. The employees Keating and Calabrese, and several others, met with a representative of District 50 on several occasions between May 21 and June 3, and thereafter commenced an organizational campaign on behalf of the union. They again distributed authorization cards among the employees and obtained the signatures of a majority.

The Regional Director of District 50, by letter of June 16th, notified the President of the respondent "that a substantial majority of the production-maintenance employees * * * [had] chosen District 50 * * * as their bargaining representative" and requested "recognition as the bargaining agent." The letter further stated:

"Should you entertain any bona fide doubt as to our union having been chosen by the majority of your aforementioned personnel, we propose an immediate conference for the purpose of resolving that doubt and will submit to any unbiased can-

vass of the situation. You know, of course, that we do not present petitions to the National Labor Relations Board."

The receipt of this unequivocal demand for recognition was acknowledged by an executive officer of the respondent, but for reasons which seem apparent was never acted upon.

### Formation of Grievance Committee

There is undisputed testimony that at noon on June 13, 1958, Blum, personnel manager, and Davis, plant manager, summoned the production and maintenance workers to separate meetings held in the respondent's plant. When these meetings were called the representatives of management were fully aware of the activities of the employees on behalf of District 50. There is further testimony, which the Trial Examiner apparently found credible, that at the meetings the employees were informed that Buitoni, President of the respondent, had requested the election of a "three-man grievance committee," and that the election would be held at 2:30 o'clock in the afternoon. The election was conducted in the plant of the respondent and under the immediate supervision of Blum.

The results of the election were announced on the morning of June 16th, shortly after a tally of the ballots under the supervision of Blum had been concluded. The employees elected to the grievance committee were Calabrese, Morro and Leopardi. The members of the committee were summoned to the office of the president, where they met with Buitoni and Cuneo and other management representatives. They were congratulated on their election and advised that thereafter they could discuss their grievances with Blum at any time.

It appears from the testimony of Calabrese, corroborated by the testimony of Cuneo, that at the meeting the activities of the employees on behalf of District 50 were inquired into and discussed. There is a conflict in the testimony as to the substance of the conversations, but there was testimony, which the Trial Examiner apparently found credible, that Buitoni openly expressed his opposition to "a union in the shop" and threatened to "close the plant down and go back to Italy * * * before he would recognize District 50." The witness Calabrese insisted on the right of the employees to union representation notwithstanding the formation of the grievance committee.

There is ample evidence that the grievance committee was a labor organization within the meaning of Section 2(5) of the Act, 29 U.S.C.A. § 152(5); it was admittedly organized for the purpose of dealing with the grievances of the employees concerning wages, hours, and conditions of employment. N. L. R. B. v. Cabot Carbon Co., 360 U.S. 203, 210, 79 S.Ct. 1015, 5 L.Ed.2d 1175 et seq. (1959); Pacemaker Corp. v. N. L. R. B., 260 F.2d 880, 883 (7th Cir.1958); N. L. R. B. v. Stow Mfg. Co., 217 F.2d 900, 904 (2d Cir. 1954), cert. den. 348 U.S. 964, 75 S.Ct. 524, 99 L.Ed. 751. There is also ample evidence that the organization of the committee was instigated, sponsored and dominated by the representatives of management. Their conduct violated Section 8(a) (1) (2) of the Act. Ibid. The management representatives disclaimed all responsibility for the committee, but a reasoned evaluation of the evidence as a whole belies the disclaimer.

The organization of the grievance committee was not an isolated occurrence but was consistent with a course of conduct pursued for many weeks by the representatives of management. There is testimony that while the employees Keating and Calabrese had been engaged in their organizational activities, first on behalf of Local 165 and later on behalf of District 50, they were questioned, warned, and at times threatened with the possible loss of their jobs. The threats of reprisals may have been subtle but they were nevertheless clear in their implications. The described course of conduct violated Section 8(a) (1) (2) of the Act. H. J. Heinz Co. v. N. L. R. B., 311 U.S. 514, 518 et seq., 61 S.Ct. 320, 85 L. Ed. 309 (1941); N. L. R. B. v. Saxe-

Glassman Shoe Corp., 201 F.2d 238, 243 (1st Cir.1953); N. L. R. B. v. Kanmak Mills, 200 F.2d 542, 543, et seq. (3rd Cir. 1952); Joy Silk Mills v. N. L. R. B., 87 U.S.App.D.C. 360, 185 F.2d 732, 740 (D. C.Cir.1950). It is reasonable to infer that the grievance committee was designedly organized to influence, discourage and thwart further union activities.

The Trial Examiner found, and the Board adopted the findings, that "management conduct clearly rendered illegal assistance to a labor organization, and interfered with, restrained, and coerced employees in the exercise of their right, under the Act, to select their own bargaining representative." The evidence as a whole, including the circumstances under which the election was held and the occurrences which preceded and followed it, convincingly supports these findings of fact.

### Strike

The members of the grievance committee summoned the employees to a meeting which was held after working hours on June 16, 1958. When the employees were informed by Calabrese that Buitoni would not recognize District 50, they voted to strike. The strike was organized on the following day, and on June 18th the employees commenced picketing in front of the respondent's premises. The strike was abandoned on June 20th, and Cuneo was informed of the employees' willingness to return to work. The employees were told not to return to work until notified, and this was confirmed by telegram addressed to each of them on the following day. The services of Calabrese, Keating and others were summarily terminated and they were so notified by telegram on July 9th.

### Discriminatory Discharges

The Trial Examiner found that Keating and Calabrese had been discriminatorily discharged because of their union activities and concluded that the conduct of the respondent violated Sections 8(a) (1) (3) of the Act. The validity of the findings, separately made as to each employee, are disputed by the respondent on the ground that they are not supported by substantial evidence. It was argued at the hearing before the Trial Examiner, as it is strenuously argued before this Court, that these employees were discharged for good and sufficient reason, to wit, the lack of competence and efficiency in the performance of their work. The argument of General Counsel was, and is, to the contrary.

We observe preliminarily that where, as here, contradictory reasons for the discharge of an employee are advanced, it is the responsibility of the Board to weigh the evidence and resolve the factual conflict. N. L. R. B. v. W. T. V. J., Inc., 268 F.2d 346 (5th Cir.1959); N. L. R. B. v. West Point Mfg. Co., 245 F.2d 783, 786 (5th Cir.1957); N. L. R. B. v. Wagner Iron Works, 220 F.2d 126, 135 (7th Cir.1955), cert. den. 350 U.S. 981, 76 S.Ct. 466, 100 L.Ed. 850; N. L. R. B. v. Whitin Machine Works, 204 F.2d 883, 885 (1st Cir.1953); N. L. R. B. v. Electric City Dyeing Co., 178 F.2d 980, 982 (3rd Cir.1950). There is clearly no obligation on the Board to accept at face value the reason advanced by the employer. The concurrent existence of an otherwise valid reason for the discharge of an employee does not preclude a factual determination that his discharge was discriminatory if it appears from a preponderance of evidence, and the reasonable inferences drawn therefrom, that the discharge was in fact motivated by the employer's opposition to the employee's union activities. Ibid.

There can be little doubt that the Trial Examiner gave careful consideration to the evidence offered by the respective parties in support of their arguments. His intermediate report contains a detailed analysis and discussion of the relevant evidence and the inferences drawn therefrom, and manifests a perceptive evaluation of the evidence as a whole. The facts as found by the Trial Examiner are amply supported by the evidence.

The employees Hirsch, Reyes and Mac-Donald were summarily discharged shortly after the strike had been abandoned, and were so notified by telegram.

It was contended before the Trial Examiner, as it is before this Court, that the discharges of these employees were warranted because they had engaged in "acts of violence" while on the picket line. The evidence as a whole, considered in the light most favorable to the respondent, does not support the contention.

The misconduct of these employees was not so serious as to warrant their summary discharges. N. L. R. B. v. Wallick, 198 F.2d 477, 485 (3rd Cir.1952). Hirsch and Reyes approached a fellow-employee and attempted to persuade him not to abandon the strike. A brief minor scuffle ensued. Their conduct may have been disorderly but to describe it as violent is a gross exaggeration. The incident in which MacDonald was involved was trivial; the mere mention of the incident in this opinion lends to it a degree of importance to which it is clearly not entitled. The evidence as a whole amply supports the Trial Examiner's determination that the named employees were "discriminatorily discharged."

### Alleged Breach of Strike-Waiver Clause

The employment relationship between the employees and the respondent was governed by the agreement of November 1, 1956, which covered hours, wages, and conditions of employment. The agreement contained a clause (Article XVII) which defined a grievance procedure for the settlement of disputes arising from either the agreement or conditions of employment and, as a concomitant, a typical strike-waiver clause (Article XIX). The parties disagree as to the binding effect of the latter clause after the formation of the grievance committee; however, resolution of this disagreement is unnecessary. We shall assume for the purpose of decision that the clause continued in effect.

■ The respondent argues that the strike was a breach of the strike-waiver clause and that the discharged employees, as active participants, forfeited their respective rights to reinstatement. The argument is untenable. There is ample evidence that the strike was in protest against the unfair labor practices of the respondent and particularly the adamant refusal to recognize District 50 as the bargaining agent of the employees. The strike was therefore a protected activity not within either the inhibition of the strike-waiver clause or the prohibition of Section 8(d) (4) of the Act. Mastro Plastic Corp. v. N. L. R. B., 350 U.S. 270, 76 S.Ct. 349, 100 L.Ed. 309 (1956), affirming N. L. R. B. v. Mastro Plastics Corp., 214 F.2d 462 (2d Cir.1954); N. L. R. B. v. Wagner Iron Works, supra, 220 F.2d 140, 141.

### Modification of Examiner's Recommendation

■ The collective bargaining agreement of November 1, 1956, between Local 102 and the respondent, contained a clause (Article VIII) under which the right of the employees to paid holidays was made conditional upon the length of their union membership. The provision was admittedly never enforced and was eliminated upon renewal of the contract in September of 1958. The Trial Examiner correctly decided that the clause was discriminatory and illegal but concluded that remedial action was not necessary to "effectuate the policies of the Act." The Board concluded otherwise and incorporated appropriate remedial provisions in the cease and desist order. The respondent objects to these remedial provisions, but the objection is not well taken.

■■ The enforcement of the Labor Management Relations Act has been entrusted to the Board, and it is therefore the function of the Board to determine what relief, if any, is necessary to undo the effects of an unfair labor practice and to insure future compliance. N. L. R. B. v. Mexia Textile Mills, Inc., 339 U.S. 563, 567, 70 S.Ct. 826, 829, 94 L.Ed. 1067 (1950); N. L. R. B. v. Newspaper & Mail Del. Union, 246 F.2d 62, 65 (3d Cir.1957); Red Star Exp. Lines of Auburn v. N. L. R. B., 196 F.2d 78, 80, 81 (2d Cir.1952). "A Board order imposes a continuing obligation; and the

Board is entitled to have the resumption of the unfair practice barred by an enforcement decree." N. L. R. B. v. Mexia Textile Mills, Inc., supra.

A decree for enforcement of the order of the Board may be submitted.