**LANDIS TOOL COMPANY, DIVISION OF LITTON INDUSTRIES, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 71–1549.

United States Court of Appeals, Third Circuit.

Argued April 7, 1972.

Decided May 22, 1972.

M. J. Diederich, Beverly Hills, Cal., for petitioner.

John Ferguson, N.L.R.B., Washington, D. C., for respondent.

Before HASTIE and GIBBONS, Circuit Judges, and BECKER, District Judge.

### OPINION OF THE COURT

GIBBONS, Circuit Judge.

This case is before us on the petition of Landis Tool Company, Division of Litton Industries, to review and set aside and order issued against it by the National Labor Relations Board, and on the

cross-application of the Board for enforcement of the order. The case arises out of a representation election held among Landis employees on May 7, 1970, which the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local Union No. 110, lost by a vote of 432 to 252. Thereupon the Union filed objections to the conduct of the election and an unfair labor practice charge against Landis. After the Board's Regional Director concluded his investigation of the Union's unfair labor practice charge the General Counsel issued a complaint. The hearing on the objections to the conduct of the election was consolidated with that on the unfair labor practice complaint. All of the objections to the election were either withdrawn by the Union or overruled by the Trial Examiner. The Trial Examiner did, however, find that Landis had engaged in some of the unfair labor practices charged, while dismissing allegations of others. Landis, the Union and the General Counsel each filed exceptions to the Trial Examiner's decision. The Board overruled all exceptions, adopted the Trial Examiner's findings, and conclusions, and ordered that the results of the May 7, 1970 election be set aside and a rerun election held. It entered a cease and desist order with respect to the unfair labor practices found by the Trial Examiner, and ordered the posting for 60 days of the usual form notice.

Landis' petition for review presents the issue whether substantial evidence on the record as a whole supports the conclusion of the Board that it interfered with, restrained and coerced its employees, in violation of § 8(a) (1) of the Act. 29 U.S.C. § 158(a) (1).

I. Solicitation of Grievances and Implied Promises to Correct Them

The Trial Examiner found that Landis' President, Ralph E. Price, at meetings of employees shortly before the election, solicited employee grievances and impliedly promised that the grievances would be remedied if the Un-

ion was defeated. The grievance solicitation meetings were not a part of any regular grievance solicitation program. There is evidence in the record which supports the Trial Examiner's conclusion that there were implied promises. For example, employee Monn testified:

"Q. I'll ask you again if you can relate to the best of your recollection the substance of what was discussed at these meetings?

A. I don't know if it was the first one or not—I believe it was all he said to us was he felt—he told us that there was enough guys signed union cards to get a vote; that he couldn't promise anything; that his hands was tied; he couldn't tell us the date of the election because it wasn't set yet. And then there was another one—he took us all up—and he wanted to know what our complaints and gripes were. He still stated that he couldn't do anything because his hands was still tied—*until the election was over*; that he couldn't promise us anything.

The guys told him about what their complaints were about; and he said that he didn't feel that that was a need for a union because he thought—that he really didn't realize that the complaints were getting that bad; and he felt that the employees there in the company could of taken this all out—*could of worked this all out—between them—without a third party.*" (131a) (emphasis supplied).

There was testimony in like vein by employees Hoffman (125a) and Mellott (140a). The examiner concluded that in a preelection context it was not necessary for Price to make express promises; a promise was implied when he told them they did not need a union to straighten out their problems. The conclusion that implied promises were made in a preelection context is supported by substantial evidence. The testimony

suggests that the employees understood their grievances would be remedied if the Union was defeated. Such conduct was an interference with rights of employees guaranteed by Section 7 of the Act, 29 U.S.C. § 157, and Landis thereby violated Section 8(a) (1), 29 U.S.C. § 158(a) (1).

■ In his discussion of Price's implied promises the Trial Examiner states:

> "The complaint allegation in this case is cast in terms of interrogation, which in a sense is an accurate description of Price's conduct, but the illegality of Price's conduct lies in the fact that the solicitation of grievances, in a preelection context, carries with it the implied promise that the grievance will be remedied." (14–15a).

Counsel for the Board in oral argument conceded that the quoted language is a dictum only. To the extent that it suggests a per se rule that any solicitation of grievances in a preelection context will always be held to imply unlawful promises we expressly disapprove it. *See* Fairchild Camera and Instrument Corp. v. NLRB, 404 F.2d 581, 583–585 (8th Cir. 1968) ; ITT Telecommunications, 183 NLRB No. 115, 74 LRRM 1386, 1387 (1970). There is substantial evidence to support the Trial Examiner's finding that implied promises were made, and that finding does not depend upon the operation of a per se rule.

### II. Interrogation and Threats

■ The Trial Examiner found that prior to the election Olen Stoops, welding department assistant foreman, interrogated employee Monn why he wanted a Union, after having informed Monn that Price had instructed all supervisors to ask employees such a question. This finding and his further conclusion that the interrogation was part of Landis' campaign against the Union, are supported by substantial evidence. He also found that Colin Beegle, welding department foreman, prior to the election asked employee Monn why he wanted the Union, related to Monn that in 1946 a previous president of Landis made the statement that he would shut the gates before he let a union in, and expressed to Monn that President Price would follow in the same footsteps. These findings are supported by substantial evidence. He also found that welding department foreman Washabaugh prior to the election interrogated employee Fair and threatened employees Fair, Fann, Miller and Ray that Landis would close its doors if the Union came in. These findings are supported by substantial evidence.

### III. Surveillance

■ The Trial Examiner found that Ralph Verdier, production manager, created the impression, in an interrogation of employee Earl Baer prior to the election, that Landis had his Union activities under surveillance. He also found that welding department foreman Washabaugh prior to the election told employees Ray and Fann that he knew they had signed union cards and that employee Miller was a union instigator, thereby creating the impression that Landis had employees' union activities under surveillance. Again credibility issues were resolved against the Landis witnesses. There is substantial evidence to support these findings.

With respect to the foregoing instances of threats, interrogation and suggestions of surveillance, the testimony of the Landis witnesses was sharply at variances with that of the employee witnesses. Landis would have us disregard the Trial Examiner's factual findings because there was testimony that it had held cautionary meetings to instruct its supervisors as to proper compliance with the National Labor Relations Act. But the Trial Examiner made credibility judgments which we cannot on this record go behind. *See, e. g.,* NLRB v. Wings & Wheels, Inc., 324 F.2d 495, 496 (3d Cir. 1963) ; NLRB v. Buitoni Foods Corp., 298 F.2d 169, 171 (3d Cir. 1962).

Landis also contends that the instances of threats, interrogation and surveillance, involving only six out of 800 employees are too marginal, minimal and isolated to justify the entry of the Board's order setting aside the election. But the incidents in question were found to be a part of a systematic program. Moreover they cannot be insulated from the meetings conducted by President Price at which implied promises were found to have been made. The Board's inference that the conduct found to have taken place was in fact coercive is a reasonable one, and we cannot substitute our own inference even if on this record we might have a different one. Universal Camera Corp. v. NLRB, 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

Finally Landis contends that assuming the Board's findings of unfair labor practices must be sustained its order was improper because of the minimal, marginal and isolated nature of the violations. But the Board points out that the interrogations and threats which were found to have taken place were concentrated in the night shift of the welding department, one of the centers of the Union's organizing efforts, and were directed to some employees having an important role in the Union's campaign. We cannot substitute our judgment for that of the Board that in the circumstances a new election was called for. The cease and desist order certainly was limited to the unfair labor practices found to have occurred. It was certainly authorized by § 10(c) of the Act, 29 U.S.C. § 160(c), and may indeed have been mandatory. *See* Eichleay Corp. v. NLRB, 206 F.2d 799, 805 (3d Cir. 1953). The notice which the Board ordered posted was also limited to the unfair labor practices found to have occurred, and was not, as Landis suggests, unduly punitive. *Compare* NLRB v. Douglas & Lomason Co., 443 F.2d 291, 295 (8th Cir. 1971).

The petition to review the Board's order will be denied. The Board's order will be enforced in full.