**In the Matter of the DEPARTMENT OF DEFENSE CABLE TELEVISION FRANCHISE AGREEMENTS National Defense Authorization Act for Fiscal Year 1996—§ 823.**

No. 96–133x.

United States Court of Federal Claims.

March 7, 1996.

SMITH, Chief Judge.

## ORDER

Section 823 of the National Defense Authorization Act for Fiscal Year 1996, Pub.L. No. 104–106, 110 Stat. 186 (1996), has given the Chief Judge of this court the task of providing the Congress with an opinion as to the answers to two legal questions.[1] The court treats any request from the legislative branch of government with the highest respect. The court also understands that in our democratic system of government the judiciary has a duty to use its institutional resources, and make available its judgment, whenever the Congress feels it might be useful in order to benefit the law-making function. This is true whether that request is for legislative information on ways to improve the administration of justice, or is about the court's docket and resources, or is embodied in special jurisdictional acts or congressional references.[2] This is particularly true for this court, given its unique historical relationship with the Congress.

■ This being said, however, the court notes that it has a duty to determine if such a request is one the court may permissibly comply with under our Constitution. As officers of the United States, the judges of the court have sworn a sacred oath to uphold and defend our Constitution, which is our first duty. In this case this duty can be analogized to a jurisdictional inquiry, since it is the prime duty of each court to determine its jurisdiction before it acts. *Marbury v. Madison*, 5 U.S. 137, 176, 2 L.Ed. 60 (1803).

The United States Court of Federal Claims is, of course, a court created under Article I of the United States Constitution, as was its predecessor, the United States Court of Claims, for much of its history. *Williams v. United States*, 289 U.S. 553, 53 S.Ct. 751, 77 L.Ed. 1372 (1933); *Glidden Co. v. Zdanok*, 370 U.S. 530, 82 S.Ct. 1459, 8 L.Ed.2d 671, *reh'g denied*, 371 U.S. 854, 83 S.Ct. 14, 9 L.Ed.2d 93 (1962). Article I courts, like courts created under Article III of the Constitution, derive their authority and their limitations from the Constitution. One such limitation, necessary for the protection of democratic liberty, is that bodies exercising the judicial power be confined to dealing with real disputes in concrete factual settings. This protects the people against

---

1. The pertinent statutory language reads:
   Sec. 823. TREATMENT OF DEPARTMENT OF DEFENSE CABLE TELEVISION FRANCHISE AGREEMENTS.
   Not later than 180 days after the date of the enactment of this Act, the chief judge of the United States Court of Federal Claims shall transmit to Congress a report containing an advisory opinion on the following two questions:
   (1) Is it within the power of the executive branch to treat cable television franchise agreements for the construction, installation, or capital improvement of cable television systems at military installations of the Department of Defense as contracts under part 49 of the Federal Acquisition Regulation without violating title VI of the Communications Act of 1934 (47 U.S.C. 521 et seq.)?

   (2) If the answer to the question in paragraph (1) is in the affirmative, is the executive branch required by law to so treat such franchise agreements?
   National Defense Authorization Act for Fiscal Year 1996, Pub.L. No. 104–106, § 823, 110 Stat. 186, 399 (1996).

2. The court hears congressional reference cases pursuant to 28 U.S.C. §§ 1492, 2509 (1994). Examples of special jurisdictional acts that confer additional jurisdiction upon the court include the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§ 300aa–1 *et seq.* (Supp.1995), and the Civil Liberties Act of 1988, 50 U.S.C.App. § 1989b (Supp.1995).

the danger that unelected judges will engage in broad public policy making, contrary to our notions of popular government. *Freytag v. Commissioner,* 501 U.S. 868, 111 S.Ct. 2631, 115 L.Ed.2d 764 (1991).[3]

With respect to Article III courts this idea, which protects popular government, has been embodied in the case or controversy limitation. *Osborn v. Bank of United States,* 22 U.S. 738, 819, 6 L.Ed. 204 (1824); *Smith v. Adams,* 130 U.S. 167, 173–74, 9 S.Ct. 566, 568–69, 32 L.Ed. 895 (1889); *Muskrat v. United States,* 219 U.S. 346, 31 S.Ct. 250, 55 L.Ed. 246 (1911). The line is not so clear, however, when it comes to Article I courts. *United States v. Klein,* 80 U.S. 128, 20 L.Ed. 519 (1871); *Pope v. United States,* 323 U.S. 1, 65 S.Ct. 16, 89 L.Ed. 3 (1944). Thus, a dispute over compensation between the United States government and two private U.S. citizens, who were severely injured by machine gun fire from the Army during the Dominican emergency of 1965, would not be a case or controversy under Article III. This case *was* appropriate for consideration by the U.S. Court of Claims as a congressional reference case, however, because it

was, in the practical sense, if not the legal sense, a real case and a real controversy. *Burt v. United States,* 199 Ct.Cl. 897 (1972). It involved real parties who were disputing issues that affected their vital rights.

■ The court has reviewed the request at issue here in this light. It has done so because courts have a solemn constitutional obligation to limit their activities to those appropriately within the judicial power and the judicial function. *Marbury,* 5 U.S. 137; *Freytag,* 501 U.S. at 889, 111 S.Ct. at 2644.

■ At first glance, the court was concerned that the statutory section, couched in the language of an advisory opinion, implied an intent for the Chief Judge's mere speculation or worse, pontification, on some abstract legal point. A further review of the statutory language in light of the very useful and helpful clarification by Senator Robert C. Smith, Chairman of the Senate Armed Services Subcommittee on Acquisition and Technology,[4] and various indications that this opinion may resolve numerous active cases in both this and the United States District Courts, have led the court to conclude that it

---

3. In *Freytag* the Supreme Court noted: "Our cases involving non-Article III tribunals have held that these courts exercise the judicial power of the United States." 501 U.S. at 889, 111 S.Ct. at 2644. And later, relying on *Williams v. United States,* 289 U.S. 553, 565–66, 53 S.Ct. 751, 754–55, 77 L.Ed. 1372 (1933), a case dealing with the Court of Claims as an Article I court, the Court further noted:

> Having concluded that an Article I court, which exercises the judicial power, can be a "Cour[t] of Law" within the meaning of the Appointments Clause, we now examine the Tax Court's functions to define its constitutional status and its role in the constitutional scheme. [citation ommitted]. The Tax Court exercises judicial, rather than executive, legislative, or administrative, power. It was established by Congress to interpret and apply the Internal Revenue Code in disputes between taxpayers and the Government. By resolving these disputes, the court exercises a portion of the judicial power of the United States.
>
> The Tax Court exercises judicial power to the exclusion of any other function. It is neither advocate nor rulemaker. As an adjudicative body, it construes statutes passed by Congress and regulations promulgated by the Internal Revenue Service. It does not make political decisions.

*Freytag,* 501 U.S. at 890–91, 111 S.Ct. at 2645. This language strongly supports the doctrine that

Article I courts, like Article III courts, have inherent limits to their functions because they are courts and exercise "The judicial Power of the United States."

4. During consideration of the Defense Authorization Act Conference Report, Senator Smith made the following statement:

> It has come to my attention that the Court of Federal Claims may have some concerns about the task we assign it in this section, given that it is not equipped to provide advisory opinions unless specific facts and parties are involved. Therefore, I wish to make clear that it is the committee's intent that the court allow the executive branch and any party with a franchise agreement in the section to part [sic] participate in the proceeding required by this section by identifying themselves promptly to the court within a period of time established by the court. The court may conduct the proceeding required by this section according to the pertinent rules of practice of the U.S. Court of Federal Claims to the extent feasible, including providing the opportunity for written submissions and a hearing. In order to ensure timely completion, any submissions or hearing should conclude no later than 120 days after the date of enactment of this act.

142 Cong.Rec. S446–02, S457 (1996).

may appropriately and in an institutionally proper manner, assist the Congress in this request. It is hoped that the court's efforts may resolve a number of actual disputes.

**IT IS SO ORDERED.**