284

TENNESSEE VALLEY AUTHORITY,
Plaintiff,

v.

The UNITED STATES, Defendant.

No. 01–249C.

United States Court of Federal Claims.

Dec. 26, 2001.

Peter K. Shea, Attorney of Record, Tennessee Valley Authority argued for plaintiff. With him on brief was Maureen H. Dunn, General Counsel, Edwin W. Small, Assistant General Counsel, Tennessee Valley Authority.

Harold D. Lester, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, Department of Justice. With him on brief was Stuart E. Schiffer, Acting Assistant Attorney General, David M. Cohen, Director. Of counsel on the brief was William L. Olsen, Commercial Litigation Branch, Civil Division, L. Dow Davis, IV and Jane K. Taylor, Office of General Counsel, U.S. Department of Energy.

## OPINION

BRUGGINK, Judge.

Pending is defendant's motion to dismiss for lack of jurisdiction. Also pending is plaintiff's motion for stay of motions for partial summary judgment recently filed by defendant pending resolution of the motion to dismiss. Oral argument was heard on December 19, 2001. For the reasons set out below the motion to dismiss is denied and plaintiff's motion for a stay is granted, albeit for different reasons.

## BACKGROUND

Tennessee Valley Authority (TVA) is an independent government corporation created by and existing pursuant to 16 U.S.C. §§ 831–831ee (1994 & Supp. V 1999). It is an executive branch agency. *See* 5 U.S.C. § 105 (1994). The purpose of the TVA is to advance the "national defense and the physical social and economic development of the area in which it conducts business" by producing, distributing and selling electricity. 16 U.S.C. §§ 831n–4(h), 831d(*l*). TVA owns and operates nuclear plants for the generation of electricity.

The Nuclear Waste Policy Act of 1982 (NWPA) required the Department of Energy (DOE) "to enter into contracts with any person who generates or holds title to spent nuclear fuel [SNF] of domestic origin for the acceptance of title, subsequent transportation, and disposal of such SNF." 42 U.S.C. § 10222(a)(1) (1994). Pursuant to these requirements, on June 28, 1983 the United States, acting through DOE, entered into a contract with TVA. The United States agreed to take title to TVA's SNF at the TVA's facilities and transport and dispose of the nuclear wastes. DOE was to begin accepting the wastes no later than January 31, 1998. The terms of the standard contract may be found at 10 C.F.R. § 966.11 (2001).

DOE did not begin accepting the nuclear wastes by January 31, 1998, as required by the NWPA. The delay, according to the government, is a result of continuing scientific testing and site characterization for site determination of the Yucca Mountain site that was designated by Congress. DOE does not anticipate that the site will be operational until at least 2010. 60 Fed.Reg. 21793, 21794 (May 3, 1995). The government did not compensate TVA for the missed deadline.

In *Maine Yankee Atomic Power Co. v. United States,* 225 F.3d 1336, 1343 (Fed.Cir. 2000) and *Northern States Power Co. v. United States,* 224 F.3d 1361, 1367 (Fed.Cir. 2000), the Federal Circuit held that the DOE's failure to begin nuclear waste acceptance from the contract holders by January 31, 1998, constituted a breach of contract. The United States Court of Federal Claims has 17 similar breach of nuclear fuel contract cases currently pending.

## DISCUSSION

Defendant's motion to dismiss is based on lack of jurisdiction. Defendant claims that TVA cannot maintain a suit against the United States because there is no "case or controversy" as required by Article III of the Constitution. Alternatively defendant asks that the case be dismissed because TVA has not exhausted its administrative remedies.

Federal courts decide "cases or controversies." U.S. Const., art. III, § 2. This requirement limits courts to questions presented in an adversarial context. *Flast v. Cohen,* 392 U.S. 83, 94, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). Although this court was created under Article I of the United States Constitution, the Article III requirement of a "case or controversy" is applicable. *Freytag v. Commissioner,* 501 U.S. 868, 889, 111 S.Ct. 2631, 115 L.Ed.2d 764 (1991) ("cases involving non-Article III tribunals have held that these courts exercise the judicial power of the United States"); *In the Matter of Dept. of Defense Cable Television Franchise Agreements,* 35 Fed.Cl. 114, 115 (1996) ("Article I courts, like courts created under Article III of the Constitution, derive their authority and their limitations from the Constitution. One such limitation, necessary for the protection of democratic liberty, is that bodies exercising the judicial power be confined to dealing with real disputes in concrete factual settings.").

█ The purpose of the "case or controversy" requirement is to ensure the existence of "that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). When the same party occupies both sides of the case caption, the question must arise, is there a real case or controversy?

█ Both TVA and DOE are agencies within the executive branch, the heads of which are subject to presidential removal. Defendant reads the judicial precedent surrounding the case or controversy requirement as establishing a simple test: if the heads of both agencies serve at the pleasure of the President, then the agencies are merely manifestations of a single real party in interest, the United States, and the dispute is non-justiciable. The court would, in effect, be refereeing a fight internal to another branch of government.

Surprisingly, there is little precedent directly addressing this question in the context of the TVA. There are decisions, however, arising in the specific context of contracts between TVA and DOE. In *TVA v. United States,* 13 Cl.Ct. 692, 699, 1987 WL 4266

(1987), also a contract dispute, this court held that TVA's fundamentally separate and independent nature made the case justiciable. A number of characteristics were found to be relevant. TVA has the authority to sue to enforce contracts. 16 U.S.C. § 831c(d). It conducts its litigation independent of the Department of Justice. *See id.* § 831c(b). And it is required by law to be financially self supporting. *See id.* § 831ee (Supp. V 1999). It has to make up any revenue shortfall from its rate base. *See* 16 U.S.C. §§ 831n–4(f) ("The Corporation shall charge rates for power which will produce gross revenues sufficient to provide funds for operation, maintenance, and administration of its power system ..."). TVA bonds are not guaranteed by the United States. *Id.* at § 831n–4(b). The related case of *Dean v. Herrington,* 668 F.Supp. 646, 652 (E.D.Tenn.1987), came to the same conclusion. The court explained that TVA's unique independence as a federal agency assured concrete adverseness. Neither decision is binding here, however.

Contrary to defendant's suggestion of a bright line test, we believe the Supreme Court suggests a broader and more circumstantial inquiry. Plainly the fact that the President can remove the heads of both agencies is highly relevant. But it is not controlling. As the Supreme Court taught in *United States v. Nixon,* 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974), "[t]he mere assertion of a claim of an 'intra-branch dispute,' without more, has never operated to defeat federal jurisdiction; justiciability does not depend on such a surface inquiry." *Id.* at 693, 94 S.Ct. 3090. According to *Nixon,* courts should consider whether there exists an actual controversy and whether that controversy is of the sort that is traditionally litigated in court. *Id.* at 696, 94 S.Ct. 3090 ("[i]n the constitutional sense, controversy means more than disagreement and conflict; rather it means the kind of controversy courts traditionally resolve."). For example, as the government concedes, a concern about merger of interests is not present when the United States merely finds itself nominally aligned with a private entity that is the real party in interest. *See United States v. Connecticut Nat'l Bank,* 418 U.S. 656, 94 S.Ct. 2788, 41 L.Ed.2d 1016 (1974).

In *United States v. ICC,* 337 U.S. 426, 430, 69 S.Ct. 1410, 93 L.Ed. 1451 (1949) the Court explained that "courts must look behind names that symbolize the parties to determine whether a justiciable case or controversy is presented." *Id.* at 430, 69 S.Ct. 1410. It found that although that case was styled "United States versus United States," behind the names there existed more than one party. By adjudicating the claim the Court would not be simply "engag[ing] in the academic pastime of rendering judgments in favor of persons against themselves." *Id.* The Court also considered whether the case "involves controversies of a type which are traditionally justiciable." *Id.* In making that assessment, the Court looked to the nature of the claim and the potential remedy.

In the case at bar, it is plain that there exists a concrete controversy between adverse parties. This is not a fight over policy. It is a dispute over money-a circumstance virtually guaranteed to break up family harmony. Who will absorb the cost of DOE's failure to perform the contract, the Treasury, or TVA's rate payers? This commercial nature of the controversy-a traditional breach of contract claim seeking money damages-makes more significant the ways in which TVA is independent. TVA can contract, sue and be sued, and represent itself in court. Those aspects of independence are precisely the characteristics implicated here.

These circumstances distinguish this case from *Landmark Land Co., Inc. v. United States,* 256 F.3d 1365 (Fed.Cir.2001) and *Glass v. United States,* 258 F.3d 1349 (Fed. Cir.2001), recent decisions of the Federal Circuit. Both cases found the Federal Deposit Insurance Corporation (FDIC), aligned on opposite sides of a contract action brought against the United States. The actions were initially brought by banks claiming that certain regulatory legislation was a breach of assistance agreements arising out of the acquisition by plaintiffs of assets of other defunct regulated banks. In both cases the FDIC later intervened in its capacity as receiver of closed plaintiff banks. The court found that FDIC's claim against the United States was non-justiciable because any pay-

ment to the FDIC as receiver would come from the FDIC as manager of the Federal Savings and Loan Insurance Corporation Resolution Fund. Money would simply have moved from one pocket of the FDIC to another.

There is no comparable concern present here. We are satisfied, if we needed any other proof than the vigorous conduct of the litigation heretofore, that opposing interests are before us with respect to the type of controversy that this court is equipped to address.

Nor are we persuaded that dismissal or even a stay is prompted by Executive Order No. 12,146 (1979). That order directs two executive agencies, when their heads serve at the pleasure of the President, to submit unresolved legal disputes to the Attorney General for resolution. Defendant seeks dismissal because of TVA's failure to invoke the mediating role of the Attorney General under the order. We will assume that the order applies to the present circumstances. As the government concedes, however, its applicability is subject to traditional considerations of futility. There is no doubt, given the large number of virtually identical related lawsuits

and the history of the litigation in those suits,[1] that reference of this isolated case to the Attorney General would be fruitless. He has made his position with respect to TVA's claim clear.

## CONCLUSION

Defendant's motion to dismiss is denied. Plaintiff's motion for stay of the pending motions for summary judgment is granted, albeit not for the reason requested. Discovery in this and other related actions is being supervised by Judge Weinstein. Consideration of defendant's other dispositive motions is stayed pending determination by Judge Weinstein of outstanding discovery requests. Plaintiff's responses to the motions for summary judgment in this action will be due 45 days after the close of discovery or the denial of further discovery by Judge Weinstein.

---

1. As counsel for the government candidly admitted at oral argument, a stay, *see TVA v. United States*, 13 Cl.Ct. at 699–703, would be problematic, given the coordinated discovery proceedings in these related cases.